**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**Brandi K. SMITH, Appellee.**

**Commonwealth of Pennsylvania,**
**Appellant**

**v.**

**David Colgan, Jr., Appellee.**

Superior Court of Pennsylvania.

Submitted July 16, 2001.
Filed Oct. 2, 2001.

William H. Graff, Assistant District Attorney, York, for Com., appellant in 1526 MDA 2000.

Heather L. Adams, Assistant District Attorney, York, for Com., appellant in 78 MDA 2001.

Bernard Ilkhanoff, Shrewsbury, for Smith, appellee.

Richard Robinson, York, for Colgan, appellee.

Before: JOHNSON, TODD and POPOVICH, JJ.

POPOVICH, J.

¶ 1 The Commonwealth brings these appeals from the orders entered in the Court of Common Pleas of York County granting the motions of appellees, Brandi Smith and David Colgan, to suppress evidence recovered following the search of Smith's vehicle. Upon review, we affirm.

¶ 2 The relevant facts and procedural history are as follows. On February 9, 2000, appellees were charged with possession of MDMA (a/k/a "ecstasy") with intent to deliver and criminal conspiracy. On the evening of February 9, 2000, at approximately 7:50 p.m., Pennsylvania State Trooper Danny J. Fry, filed an application for an anticipatory search warrant and supplied the following information in the affidavit of probable cause:

My name is Danny J. Fry of the Pa. State Police. I have been a trooper with the Pa. State Police for approx. the last six years. During that time, I have conducted numerous drug investigations, which have led to arrests and convictions. I have also been the affiant on numerous search warrants, and have been present on the service of numerous other search warrants. During my career with the state police, I have received several hours of training on conducting drug investigations, dealing with informants, drug identification and interdiction techniques. Additionally, I have been assigned to the Troop H–Vice/Narcotics Unit and the York County Drug Task Force for the past year. I have received information from a confidential informant that an individual known as "Dwayne" travels to the Philadelphia area to purchase drugs, specifically "ecstasy" and returns to the York County area to distribute the drugs. The informant also advised that an individual named Brandi Smith also makes these trips to Philadelphia to purchase drugs and also returns to York County to sell and distribute the drugs. This informant related that a trip would be made on this date, 02/09/00, by Brandi or Dwayne to Philadelphia to purchase a quantity of ecstasy and possibly other drugs. The informant said that Dwayne would be meeting another individual by the name of Tim Ensminger at the First Central Mortgage Company, located on York Street in Hanover Boro to pick up an amount of cash. The informant said this meeting was to occur at approx. 1500 hrs. on this date.

On this date, surveillance was set up at the First Central Mortgage Company by State Troopers and members of the York County Drug Task Force. At 1520 hrs, a blue Volkswagen, bearing Pa. Registration BZE1027, was observed entering the parking lot of the First Central Mortgage Company. Two males were observed in the Volkswagen, who then met with an individual who was known as Tim Ensminger in the parking lot. This meeting took place for three minutes and the two males in the Volkswagen then departed the parking lot. Ensminger was observed going back into the mortgage company. A check through PennDot showed that the Volkswagen, bearing Pa. Registration BZE1027, was registered to Brandi Kay Smith of 523 Lakeview Circle, Littlestown, PA 17340 and was registered to a 1998 Volkswagen.

The Volkswagen was then observed heading east towards the direction of Philadelphia. The Volkswagen was observed traveling from Rte. 222 to the Turnpike via the Ephrata Interchange at 1720 hrs. The Volkswagen was then observed traveling east on the Turnpike towards the Philadelphia area.

Based on the above information that the informant provided and the corroboration of the information from surveillance by police, I believe that there is probable cause to believe that the occupants of the Volkswagen will be returning to York County area with MDMA, "ecstasy," and possibly other drugs. I respectfully request that an anticipatory warrant be issued to search the Volkswagen bearing Pa. Registration BZE1027 and its occupants, as it returns to the York County area. Due to the fact of possible delays in the Philadelphia area as a result of traffic and other possible situations, I further request that a nighttime warrant be authorized. (Search Warrant Affidavit No. 02–09–00).

¶ 3 District Justice James S. Miner issued an anticipatory search warrant for the Volkswagen when it returned to York County. Smith was driving and Colgan was a passenger when at 9:10 p.m., the vehicle returned to York County and was stopped. The search warrant was executed and police recovered 150 ecstasy pills during the search. Appellees were arrested, and both waived arraignment. On May 15, 2000, Smith filed an omnibus pre-trial motion requesting the lower court to suppress the physical evidence found as a result of the search of the Volkswagen. On June 21, 2000, a hearing was held on her request. The lower court found the affidavit of probable cause lacked sufficient indicia of reliability to support the issuance of the search warrant, and the court suppressed the evidence. On June 22, 2000, Colgan also filed an omnibus pre-trial motion to suppress the evidence recovered from the search of Smith's vehicle. On August 23, 2000, Colgan filed a supplemental omnibus pre-trial motion asking for a suppression order identical to that entered in Smith's case. On October 12, 2000, Colgan's motion was granted and the evidence was suppressed. This appeal followed.

¶ 4 Herein, the Commonwealth raises the following issue for our review:

Whether the lower court erred in granting the suppression motion where the anticipatory search warrant used to search the appellee's car was based on sufficient probable cause to justify the granting of the search warrant?

Appellant's brief, p. 4.

■ ¶ 5 Recently, in *Commonwealth v. Coleman*, 769 A.2d 462 (Pa.Super.2001), we restated our standard of review from a suppression court's ruling.

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis' for concluding that probable cause existed.

*Id.* (citations omitted). A magistrate's finding of probable cause "must be based on facts described within the four corners of the affidavit[,]" *Commonwealth v. Stamps*, 493 Pa. 530, 427 A.2d 141, 143 (1981), and "our scope of review of a suppression court's ruling [on a magistrate's finding of probable cause] is confined primarily to questions of law." *Id.* (citing *Commonwealth v. Sharp*, 453 Pa.Super. 349, 683 A.2d 1219, 1221 (1996)). Further, where the Commonwealth appeals the decision of the suppression court, we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains

uncontradicted. *Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985). Where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. *Id.*

¶ 6 Preliminarily, we note that in addition to its finding that the affidavit lacked sufficient indicia of reliability, the lower court stated it relied on our decision in *Commonwealth v. Coleman,* 743 A.2d 983 (Pa.Super.1999), in finding that although the police may have had reason to believe that there would be drugs in the vehicle in the future, they did not have reason to believe there were drugs in the vehicle at the time they applied for the warrant. In *Coleman,* 743 A.2d 983, we stated a "magistrate's finding of probable cause to issue an anticipatory search warrant may be based only on circumstances presently known to the police and not on the occurrence of triggering events enumerated in the affidavit." Our ruling was later reversed by our Supreme Court which stated that although probable cause must exist at the time the warrant is authorized, a magistrate may consider likely future events subject to the "strictures attending all probable cause evaluations." *See Commonwealth v. Glass,* 562 Pa. 187, 754 A.2d 655 (2000).

■ ¶ 7 We also note that in *Glass,* the Supreme Court held that an anticipatory search warrant is not per se violative of Article I, Section 8 and stated that a magistrate, when considering whether there is probable cause for the issuance of an anticipatory search warrant, may rely on information in an affidavit concerning future events "so long as [the] factual averments [are] reliable and probative of the likelihood that evidence will be found where and when the warrant is to be executed." *Id.* at 664. The Supreme Court explained:

Anticipatory search warrants pose no threat to settled views of probable cause. The very nature of a search warrant is in a sense "anticipatory." Time being a continuum, the analysis cannot be otherwise. Warrants authorize future searches, not searches into the past. There is always a lag between the underlying observation, the representations of the affiant, the issuance of the warrant, and its ultimate execution. Presented with a series of factual averments, the magistrate must determine, or anticipate, whether there is a fair probability that evidence of a crime "will be found" in a particular place when the warrant is executed. Although probable cause unquestionably must exist at the time the warrant is authorized, *see, e.g., Commonwealth v. Tolbert,* 492 Pa. 576, 579–80, 424 A.2d 1342, 1344 (1981) (citation omitted), the magistrate's assessment of probable cause, as well as the ultimate question as to whether the warrant should issue, is distinctly forward-looking.

*Id.* The Supreme Court also noted that magistrates may not issue warrants anytime they are presented with a speculative future scenario assured only by the contingency that the warrant will not be executed until probable cause exists. *Id., see also Coleman,* 769 A.2d at 468. The affidavit must contain sufficient information to establish probable cause at the time the warrant is authorized. *See Glass,* 754 A.2d at 663. Therefore, a finding of probable cause based upon information regarding future events must at least establish a fair probability that the future events will in fact occur. *Id.*

■ ¶ 8 While we believe it is important to note the difference in the law as it stands presently compared to when the lower court issued its ruling, we find that there was not sufficient probable cause to

justify the issuance of the warrant either based on the facts known to Trooper Fry at the time the warrant was issued or based on information regarding future events that would occur later that evening. Further, we agree with the lower court that the affidavit lacked sufficient indicia of reliability to support a finding of probable cause to issue the warrant.

¶ 9 The standard for evaluating whether probable cause exists for the issuance of a search warrant is the same under both the Fourth Amendment and Article I, § 8: the "totality of the circumstances" test set forth in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See Glass, supra.* This Court specifically adopted that standard as a matter of Pennsylvania constitutional law in *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1985). As we noted above, pursuant to the "totality of the circumstances," the task of an issuing authority is "simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gray*, 509 Pa. at 484, 503 A.2d at 925 (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332). Thus, the totality of the circumstances test "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Gates*, 462 U.S. at 234, 103 S.Ct. 2317.

¶ 10 Presently, the lower court determined that the affidavit provided by Trooper Fry lacked sufficient information regarding the confidential informant's reliability. This information was critical to the court's finding of insufficient probable cause.

¶ 11 In the case of *In the Interest of O.A.*, 552 Pa. 666, 717 A.2d 490 (1998), our Supreme Court explained that the reliability of an informant should be established by some objective facts that would enable any court to conclude that the informant was reliable. The Supreme Court also reiterated the principle espoused in *Gates* that where the reliability of the informant is not established, then the facts and circumstances surrounding the tip must provide sufficient indicia of reliability to support a finding of probable cause. *Id.* The Supreme Court explained:

[W]hen police are relying on an informant's tip, it is important that the tip provide information that demonstrates "inside information" a special familiarity with the defendant's affairs. *[Alabama v.] White* [496 U.S. 325] at 332, 110 S.Ct. [2412] at 2714 [2417], 110 L.Ed.2d [301] at 310 [(1990)]. If the tip provides inside information, then police corroboration of this inside information can impart additional reliability to the tip. *White* at 331, 110 S.Ct. at 2416, 110 L.Ed.2d at 309; *Gates* at 245–246, 103 S.Ct. at 2335, 2336, 76 L. Ed 2d at 552–553. If the facts that are supplied by the tip itself are no more than those easily obtained, then the fact that the police corroborated them is of no moment. It is only where the facts provide inside information, which represent a special familiarity with a defendant's affairs, that police corroboration of the information imparts indicia of reliability to the tip to support a finding of probable cause.

*Id.*, see also, *Commonwealth v. Torres*, 564 Pa. 86, 764 A.2d 532 (2001).

¶ 12 Trooper Fry provided no information to support that the confidential informant was reliable. He gave no indication of the informant's past history of reliability or where the informant obtained the information provided regarding the meeting at

the mortgage company, the trip to Philadelphia, or the return to York County with drugs. There were no objective facts provided in the affidavit regarding this information. Trooper Fry did not indicate that he has used this confidential informant before or that this informant has been involved in other cases involving drug transactions and has been correct in the information provided.

¶ 13 Further, where, as here, the reliability of the informant is not established, then the facts and circumstances surrounding the tip must provide sufficient indicia of reliability. We find that no such indicia of reliability here. We note that while police corroboration of aspects of a tip which demonstrate a special familiarity with the defendants' affairs may impart an indicia of reliability to the tip, the informant's tip did not provide that type of information here. In fact, the confidential informant was incorrect about several material facts. The informant stated that a person known as Dwayne would be meeting a person named Tim Ensminger at the First Central Mortgage Company at approximately 3:00 p.m. to exchange money and then either Dwayne or Brandi would travel to Philadelphia to obtain drugs and return to York to distribute them. Surveillance was set up by state troopers at the First Central Mortgage Company. At 3:20 p.m. a blue Volkswagen entered the parking lot from which two males exited, neither of whom was Dwayne. The males met with Ensminger for approximately three minutes and, during that time, no money was exchanged. The Volkswagen then exited the parking lot and headed east on the turnpike with no further information as to where the vehicle actually traveled. We note that the Volkswagen was registered to Brandi Smith, but there was no indication that either Dwayne or Brandi traveled to Philadelphia as neither was observed anywhere in the vicinity of the mortgage company. We also note that the events observed involved no illicit behavior whatsoever that would support a fair probability that the future events alleged by the informant would occur. Thus, based on the misstatements of the confidential informant and the fact that there was no information regarding the reliability of the informant provided in the affidavit, we agree with the lower court's finding that that the affidavit did not support a finding of probable cause to issue a search warrant. Accordingly, we affirm the orders entered by the suppression court.

¶ 14 Orders affirmed.