**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**John C. KOEHLER, Appellant.**

Superior Court of Pennsylvania.

Submitted July 3, 2006.

Filed Dec. 8, 2006.

Daniel J. Brabender, Jr., Erie, for appellant.

Bradley H. Fould, Asst. Dist. Atty., Erie, for Com., appellee.

BEFORE: STEVENS, MUSMANNO, and PANELLA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Erie County after a jury convicted Appellant of 14 counts of Sexual Abuse of Children/Possession of Child Pornography, 18 Pa.C.S.A. § 6312(d), *infra.* Appellant challenges the denial of his suppression motion, the sufficiency of evidence in support of the jury verdicts, and the legality of imposing 14 separate punishments for each conviction under Section 6312(d). We affirm.

¶ 2 The trial court has aptly summarized the factual and procedural background of the case, in pertinent part, as follows:

On May 13, 2004, a Criminal Information was filed charging Appellant with nineteen (19) counts of Possession of Child Pornography [under Section 6312(d)] [footnote 1 omitted]. The charges stem [from the following investigations]:

On or about August 15, 2003, Agent William Wehrle of the Pennsylvania Board of Probation and Parole, the parole agent for [Appellant], was contacted by Eric Smith of the Millcreek Police Department. Officer Smith informed Agent Wehrle that he believed [Appellant] had been involved with two young female runaways. Agent Wehrle began an investigation into this matter because [Appellant's] parole contract provided that he was to have no contact with minor females.

Agent Wehrle interviewed a seventeen year old girl [not one of the runaways] who told him that she had gone to dinner with [Appellant]. She indicated to Agent Wehrle that she had gone out with [Appellant], that he knew how old she was, and that he asked her if she knew anyone who would want to go out with him[, and that he was looking for sex from somebody.] She also stated [her familiarity with the fact that Appellant] worked at a cellular phone kiosk at the mall and that a number of minors hung around [Appellant's] kiosk. [On the basis of this information, Agent Wehrle obtained authorization from his supervisor to arrest Appellant on a parole violation and to search Appellant's place of business, car, and residence. To accomplish this,] Agent Wehrle requested assistance from the Millcreek Police Department.

Agent Wehrle met with three uniformed police officers at the Millcreek mall. Agent Wehrle took [Appellant] into custody for a violation of the special conditions of his parole and informed him that he was going to search his business, his vehicle, and his residence. At that time, [Appellant] informed Agent Wehrle that he had another apartment in addition to his approved residence, and he gave Agent Wehrle permission to search that apartment. He also provided Agent Wehrle with the keys to his car and told him where it was. [Appellant] did not object to the search of the kiosk. [Appellant did not, however, give consent to search his approved residence.]

[While still at the kiosk, Appellant] told Agent Wehrle that he did have contact with the two runaways and showed Agent Wehrle that he had there [sic] phone numbers stored in his cell phone and allowed Agent Wehrle to call the number. Agent Wehrle spoke with the girls' mother [right then, who informed Agent Wehrle that the girls had since returned to her in Ohio.] Agent Wehrle also found [Appellant's personal] digital camera in the kiosk[, the type that you hook up to a computer and print the pictures.]

Agent Wehrle then went to [Appellant's] approved residence. Agents Michael Wilcox and Vanessa Booker went along as back up. No police officers were present at the residence. [Appellant's] aunt showed the agents to [Appellant's] room as well as two other areas where [Appellant] had property. [Appellant] had a computer in his bedroom, and Agent Wehrle asked Agent Wilcox to access it. Agent Wilcox moved the mouse, and the monitor came on. Agent Wilcox opened a file that had the word "nude" in the title. A picture of a nude female came onto the screen. Agents found about twenty-five other photos of females who appeared to be minors.... Agent Wehrle had Agent Wilcox print out the photos and then ended the search. Agent Wehrle seized the digital camera, two cell phones, the e-mail addresses [contained in a shoebox], a book about how to come up with a new identity, a book about making a silencer for a gun, Mastercard bills, and a black nylon holster.

Agent Wehrle contacted the FBI office in Erie because he believed they had found criminal activity that was beyond the scope of a parole violation. Agent Wehrle was then contacted by a member of the Erie County District Attorney's Office and the City of Erie Police Department. Two uniformed police officers and Detective Barber of the Sex Crimes Unit were dispatched to [Appellant's] residence. [Concluding the materials recovered were sexually explicit photos of minors, Detective Barber applied for a search warrant for Appellant's bedroom.]

[T]he execution of [the] search warrant ... by Detective Barber ... [occurred that same day]. Detective Barber seized Appellant's computer (CPU tower, printer, monitor, keyboard & mouse), disks, CD's and other memory storage devices. The seized computer was sealed with evidence tape and all items were taken to ECPD headquarters and locked up over the weekend until August 18, 2003. On that date, all of the items seized were transferred to a property evidence locker and remained there until August 25, 2003, when Detective Barber removed them and took the items to the Erie County District Attorney's Office. Detective Barber requested that they perform a computer forensic analysis of the seized items.

Erie County Detective Jessica Lynn performed a computer forensic examination of Appellant's computer hard-drive by creating and utilizing an image of the hard-drive, to avoid corrupting or contaminating the original. Detective Lynn used a computer forensic software program known as Forensic Tool Kit ("FTK") to analyze the image of Appellant's computer hard-drive in September 2003. Detective Lynn testified she discovered two hundred fifty-six (256) video clips depicting children, and bookmarked three hundred thirty-five (335) items as possibly being child pornography. Detective Lynn turned this information over to Detective Barber, who used it to form the basis for the nineteen (19) charges filed against Appellant.

The video clips forming the basis of these charges consisted of several different young females engaged in various acts of sexual exhibition, in either a nude or partially nude state.[2] These video clips also included one video clip of one young nude female urinating into another young nude female's mouth, and another video clip depicted a young nude female engaged in the act of masturbation with a vibrator.[3]

---

2. The Criminal information lists the following names and ages of the female victims: Count 2—"Dina" age 12; Count 4—"Katya" age 11; Count 5—"Katya2" age 12; Count 6—"Ludmilla" age 11; Count 7—"Masha" age 11; Count 8—"Nadya" age 12; Count 9—"Nastaya" age 11; Count 10—"Tamara" age 12; Count 11—"Tina" age 11; Count 13—"Valya2" age 12; Count 14—"Vika" age 14; and Count 15—"Zoya" age 11.

3. These video clips were set forth in the Criminal Information as [] the basis for Counts 18 and 19. Further, testimony at trial revealed the titles of these video clips to be "Teens Pee on Each Other" and "Vibrator Girl", respectively.

---

On June 24, 2004, Appellant filed an Omnibus Pre–Trial Motion seeking suppression of the evidence seized as a result of the search warrant. The Honorable Fred P. Anthony issued an Order on June 30, 2004, scheduling a hearing to take place on August 23, 2004. [After several continuances,] an evidentiary hearing was held before Judge Anthony to address Appellant's Omnibus Pre–Trial Motion.... On December 23, 2004, Judge Anthony issued an Opinion denying Appellant's Suppression Motion.
* * *
On July 19, 2005, after a four-day jury trial, Appellant was found guilty of fourteen (14) counts of Sexual Abuse of Children/Possession of Child Pornography.[4]

---

4. As previously noted, Appellant was originally charged with nineteen (19) counts [under Section 6312(d)]. However, prior to trial, the Commonwealth moved to *nolle pros* five (5) counts, and [the trial court] granted *nolle pros* of Counts 1, 3, 16, & 17.

---

On July 22, 2005, Appellant filed a Motion for New Trial that was denied by Order dated August 1, 2005. On August 18, 2005, the Commonwealth filed a Motion to Continue Sentence in order to have Appellant assessed as a sexually violent predator, which could not be completed by the Sexual Offenders Board until October 18, 2005. An Order was issued on August 22, 2005, granting the continuance and scheduling Appellant's sentence for November 1, 2005....

On November 1, 2005, Appellant was sentenced [to serve twelve (12) months to twenty-four (24) months incarceration in a state correctional facility on each of his fourteen convictions, sentences to run consecutively.] Therefore, Appellant's aggregate sentence was one hundred sixty-eight (168) months to three hundred thirty-six months, or fourteen (14) to twenty-eight (28) years' [imprisonment.]

On November 4, 2005, Appellant filed a Motion to Modify and Reduce Sentence that was denied by Order dated November 7, 2005. Appellant filed a Notice of Appeal on November 22, 2005. [footnote omitted]. The Court issued an Order dated November 29, 2005, requiring a Concise Statement of Matters Complained of on Appeal to be filed within fourteen (14) days. On December 7, 2005, Appellant filed a Concise Statement of Matters Complained of on Appeal and an Amended Concise Statement of Matters Complained of on Ap-

peal was filed on December 29, 2005....

Trial Court Opinion, 2/16/06, at 1–6.

¶ 3 Appellant raises four issues on appeal:

I. WHETHER THE SUPPRESSION COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE?

II. WHETHER THE SUPPRESSION COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE WHERE THE APPLICATION FOR THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE?

III. WHETHER THE JURY'S VERDICTS WERE BASED ON INSUFFICIENT EVIDENCE?

IV. WHETHER THE IMPOSITION OF 14 SEPARATE SENTENCES TOTALING 28 YEARS OF INCARCERATION CONSTITUTES AN ILLEGAL SENTENCE IN VIOLATION OF THE DOUBLE JEOPARDY PROVISIONS OF THE UNITED STATES CONSTITUTION?

Brief of Appellant at 6.

¶ 4 Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. *Commonwealth v. Levanduski,* 907 A.2d 3 (Pa.Super.2006). Our scope of review is limited:

[W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Jones,* 874 A.2d 108, 115 (Pa.Super.2005) (internal citations and quotation marks omitted).

¶ 5 Appellant contends that the parole agents who initiated the search of his residence and computer files did so without reasonable suspicion to believe that either would contain evidence of a violation of the conditions of his parole. We disagree.

¶ 6 61 P.S. § 331.27a, *Searches by State Parole Agents,* specifically grants authority to parole agents to conduct personal searches and property searches of parolees without a warrant and without probable cause. The law provides, in pertinent part:

(a) State parole agents are in a supervisory relationship with their offenders. The purpose of this supervision is to assist the offenders in their rehabilitation and reassimilation into the community and to protect the public.

(b) State parole agents are authorized to search the person and property of State offenders in accordance with the provisions of this section....

* * *

(d)(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

* * *

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search

and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

(i) The observations of agents.

(ii) Information provided by others.

(iii) The activities of the offender.

(iv) Information provided by the offender.

(v) The experience of agents with the offender.

(vi) The experience of agents in similar circumstances.

(vii) The prior criminal and supervisory history of the offender.

(viii) The need to verify compliance with the conditions of supervision.

61 P.S. § 331.27a (in pertinent part).

¶ 7 Cases have explained why reasonable suspicion suffices to authorize warrantless searches of parolees. "Because 'the very assumption of the institution' of parole is that the parolee 'is more likely than the ordinary citizen to violate the law,' the agents need not have probable cause to search a parolee or his property; instead reasonable suspicion is sufficient to authorize a search." *Commonwealth v. Curry,* 900 A.2d 390, 394 (Pa.Super.2006) (quoting *Commonwealth v. Moore,* 805 A.2d 616, 619 (Pa.Super.2002)). Parolees agree to "endure warrantless searches" based only on reasonable suspicion in exchange for their early release from prison. *Id.* (quoting *Commonwealth v. Appleby,* 856 A.2d 191, 195 (Pa.Super.2004)).

¶ 8 These principles and the facts of the present case compel the conclusion that there was reasonable suspicion to believe that Appellant's residence contained evidence of violations of the conditions of his parole. Prior to entering Appellant's approved place of residence, Agent Wehrle's investigation had uncovered the following: statements from a seventeen year old girl that Appellant had taken her out to dinner and asked if she knew anyone interested in having sex with him, and that many minor females frequented Appellant's approved place of business at a mall cell phone kiosk; that Appellant had admitted contact with two other teenage girls who had runaway from Ohio, having their phone numbers stored in the memory of his cell phone; and that Appellant kept a digital camera at his place of business, the type of camera that can be connected to a home computer in order to download and print the photos.

¶ 9 This collection of evidence raised reasonable suspicions that Appellant was making sexual advances to minor females, that he had somehow gained correspondence with two more minor female runaways, and that he was taking pictures of other minors at his place of work and downloading the photos in his home computer. In Agent Wehrle's experience, offenders with Appellant's background often gain correspondence with minors through email, and take photos and store them in their home computers. N.T. 9/15/04 at 25. In view of these circumstances, we conclude that there was reasonable suspicion to conduct a warrantless property search of Appellant's approved residence and the computer therein.

¶ 10 Appellant next raises the related challenge that Detective Barber's application for a search warrant was not supported by probable cause. Specifically, Appellant contends that the application averred only to nude photographs of minors, which alone does not rise to the child pornography proscribed under 18 Pa. C.S.A. 6312(d). We disagree.

¶ 11 Under 18 Pa.C.S.A. § 6312, **Sexual Abuse of Children,** Subsection 6312(d),

**Possession of Child Pornography,** provides:

> Any person who knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act is guilty of a felony of the third degree.

18 Pa.C.S.A. 6312(d). Under Subsection 6312(a), **Definition,** a "prohibited sexual act" is defined as:

> sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals *or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.*

18 Pa.C.S.A. § 6312(a) (emphasis added).

¶ 12 The affidavit of probable cause filed in support of the search warrant states that Detective Barber was contacted by Agent Wehrle for what Agent Wehrle believed was child pornography. Further down the affidavit, Detective Barber describes the photographs stored in Appellant's computer. The photos

> "appeared to be of young females, under the age of 18 years old, one totally nude showing the female breast and genitals. Others partially nude showing breast, and the touching of breast.... This affiant, being a City of Erie Police Officer for the past 12½ years and a Detective assigned to the Sex Crimes Unit for the past 3 years, believe [sic] this search warrant is necessary for the completion of this case."

C.R. # 7.

¶ 13 Existence of probable cause is evaluated under a "totality of the circumstances" standard. *Commonwealth v.*

*Smith,* 784 A.2d 182, 187 (Pa.Super.2001). An issuing authority must make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of any hearsay statements, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.*

¶ 14 The totality of circumstances presented to the magistrate here provided probable cause to search Appellant's residence and computer for photographs depicting prohibited sexual acts and child pornography as defined under Section 6312. The affidavit of probable cause informed the magistrate that a detective with three years' experience with the Sex Crimes Unit viewed in Appellant's residence numerous photographs of nude and partially nude minor females, showing genitalia, with some involving touching of breasts, and thus believed that a search warrant was necessary to complete investigation into the case. The standards of "practicality" and "common sense" that guide issuing authorities require the conclusion in this instance that such depictions were "for the purpose of sexual stimulation or gratification of any person who might view such depiction" as proscribed under Section 6312. Accordingly, Appellant's challenge to probable cause supporting the search warrant of his residence is wholly void of merit.

¶ 15 Appellant next raises several challenges to the sufficiency of the evidence offered to prove the charges against him. In analyzing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, and draw all reasonable inferences in its favor. We then determine whether the evidence was sufficient to have permitted the trier of fact to find that each element

of the crimes charged was established beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence, and the factfinder is free to believe all, part, or none of the evidence. *Commonwealth v. Davidson*, 860 A.2d 575 (Pa.Super.2004), *appeal granted* at 582 Pa. 356, 871 A.2d 185 (2005).

¶ 16 18 Pa.C.S.A. § 6312(d) contains three elements. There must be a depiction of an actual child engaged in a prohibited sexual act or simulation of such act; the child must be under the age of 18; and the defendant must have possessed or controlled the depiction knowingly. *Id.*

¶ 17 The crux of Appellant's first sufficiency challenge is that evidence failed to prove he possessed or constructively possessed twelve video clips[1] on August 15, 2003, the date delineated in the criminal information against him. Because the twelve video clips downloaded on his computer had, prior to the August 15, 2003 seizure of Appellant's computer, been deleted to an unallocated hard drive space inaccessible to him, he contends that it would have been impossible for him to constructively possess the materials on the August 15, 2003 as charged.

¶ 18 It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty. . . ." *Commonwealth v. Jette*, 818 A.2d 533, 535 (Pa.Super.2003) (citation omitted). The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons*, 567 Pa. 24, 784 A.2d 776 (2001).

¶ 19 However, "[d]u[e] process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a single specific date of an alleged crime. *Commonwealth v. Devlin*, 460 Pa. 508, 515–516, 333 A.2d 888, 892 (1975). Additionally, "indictments must be read in a common sense manner and are not to be construed in an overly technical sense." *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa.Super.2006) (quoting *Commonwealth. v. Ohle*, 503 Pa. 566, 588, 470 A.2d 61, 73 (1983)). Permissible leeway regarding the date provided varies with, *inter alia*, the nature of the crime and the rights of the accused. *Commonwealth v. Einhorn*, 911 A.2d 960, 978 (Pa.Super.2006). *See* Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations.

¶ 20 Contrary to Appellant's claim, the criminal information does not allege possession existed precisely on August 15, 2003. Rather, the information alleges possession "on or about August 15, 2003," with August 15th clearly marking the timeframe's logical endpoint as authorities seized his computer on that date. Given the seizure, the "on or about" language in the information necessarily meant that the prosecution would confront Appellant at trial with evidence that his computer contained child pornography intentionally downloaded or saved therein on or *before* the date his computer was seized. Indeed, the intentional downloading of each video clip—an act this Court has recently recog-

---

**1.** The twelve video clips were the subject of counts 2, 4, 5, 6, 7, 8, 9, 10, 11, 13, 14, and 15.

nized constitutes possession under Section 6312(d) [2]—would have necessarily predated the August 15th search and seizure of the computer.

¶ 21 The question then becomes whether the evidence involved a time period contemplated within the reasonable scope of "on or about August 15, 2003" such that the evidence supported each charge as alleged in the criminal information. We conclude that evidence that Appellant had downloaded each of the twelve video clips over a three week span ending just one month prior to August 15, 2003 was well within the timeframe contemplated by the criminal information. Likewise, evidence that Appellant thereafter stored each video clip in the hard drive's user-accessible "recycler" for at least some, if not most, of the remaining time leading up to August 15, 2003, before deleting them to an inaccessible hard drive space also came within the reasonable scope of the "on or about" language in the criminal information.

¶ 22 Accordingly, the evidence of possession offered against Appellant with respect to the twelve video clips at issue was well within the timeframe contemplated by the criminal information and suffered to prove the allegations set forth therein. We thus find no merit to Appellant's first sufficiency challenge.

¶ 23 Likewise without merit are Appellant's sufficiency claims based on: others in his home, *to wit*, his aunt, brother, and friend all having equal access to the computer; no direct evidence that he ever viewed the materials at issue; no direct evidence that Appellant had been the one to subscribe and pay for internet service; and no direct evidence that Appellant was the one to have visited the pornographic websites from where the twelve videos were obtained and paid for the videos. Each argument implicates the jury's factual determinations, and, as we note above, it is the province of the jury to pass on the weight to be accorded evidence and to assess the credibility of witnesses. *See Davidson, supra.* Here, the jury clearly disbelieved defense theories on Appellant's access to and activities on the computer in question, and there exists no reason to disturb the jury's determination on appeal.

■■■ ¶ 24 Nevertheless, it is clear that sufficient evidence existed to support the jury's determination. The Commonwealth established, *inter alia*, that the computer bore a screen name, systems properties name, and a software registration name all referring in some respect to Appellant's proper name. Furthermore, the Commonwealth established that 12 of the 14 video clips in question were downloaded onto his computer in the early morning before Appellant's work hours began, and the other two videos were downloaded at nearly midnight, after Appellant's work hours. The totality of the circumstances presented at trial thus permitted the jury to infer Appellant's ownership, use, and ability to access the materials at issue such that it was he, and no one else in his aunt's home, who possessed the child pornography at issue.

---

**2.** In *Commonwealth v. Diodoro*, 2006 Pa.Super. 3555 at ¶¶ 2, 5, 10, 18 (Pa.Super.2006), this Court held that that absent evidence that the defendant knowingly downloaded or saved pornographic images to his hard drive, or knew that the web browser cached the images, he could not be criminally liable under Section 6312(d) for merely viewing the images on his computer screen. Here, Appellant does not dispute that intentionally downloading the video clips or storing the video clips in an accessible space such as the "recycler" constitutes possession proscribed under Section 6312(d). His claim, rather, is that whatever alleged possession may have occurred through such intentional downloading and storing in the "recycler" ended before the timeframe contemplated in the criminal information.

¶ 25 Appellant's final sufficiency challenge is that the two video clips in counts 18 and 19, respectively, depicted persons who were not proven beyond a reasonable doubt to be under the age of 18. Without either direct evidence or expert opinion as to age, Appellant argues, the jury was not capable of determining the age of the purportedly post-pubescent females.

¶ 26 There appears nothing in the certified record before us, however, to compel reversal of the court's ruling to admit video clips 18 and 19 for the jury's review. As we thoroughly explained in *Commonwealth v. Robertson–Dewar*, 829 A.2d 1207, 1212–1214 (Pa.Super.2003), "the proof necessary to satisfy the element of age in a dissemination or possession of child pornography case is not limited to expert opinion testimony." *Id.* at 1212. Section 6312 does not mandate expert testimony on age, as it permits a case-by-case process whereby the trier of fact may be able to decide the element of age based on the outward physical appearance of an alleged minor. *Id.* at 1213. However, where the alleged minor is post-puberty but appears quite young, expert testimony may well be necessary to assist the trier of fact as to age. *Id.* (citation omitted).

¶ 27 The problem we face in reviewing this challenge is that Appellant fails to direct us to where in the trial transcript the element of age regarding video clips 18 and 19 was discussed, or where Appellant objected to the admission of the video clips without expert opinion on age. The only citation to the record offered by Appellant shows that the videos were admitted into evidence and played for the jury without objection. It appears, therefore, that Appellant has failed to preserve this issue with a timely and specific objection as required under Pa.R.A.P. 302.

Even if Appellant claimed to have preserved this issue elsewhere in the record, his lack of citation to that portion of. the record has impeded our review and violates Pa.R.A.P. 2117(a)(4) and 2119, as it is not this Court's duty to become an advocate for an appellant and comb through the record to assure the absence of trial court error. *See Commonwealth v. Hakala*, 900 A.2d 404, 407 (Pa.Super.2006).

¶ 28 Nevertheless, we have undertaken an examination of the trial transcript and have found no defense motion or objection with respect to video clips 18 and 19 other than one invoking Pa.R.E. 404B for unfair prejudice with respect to the titles and content of each video. The court overruled this objection and ruled the videos admissible. N.T. 7/18/05 at 35–37. In any event, even if we were to address Appellant's claim that the depicted females were of a post-pubescent appearance requiring expert opinion to establish the element of age, the record provides inadequate information to support this claim. Our review yields only a discussion, out of the jury's presence, where the trial court and the prosecution referred to the females as "juveniles," "young juveniles," or "young naked females" without any indication that their physical appearance created doubt about the element . of age. See N.T. 7/18/05 at 35–37. Indeed, nowhere in this discussion does Appellant challenge the court's and prosecution's descriptors or argue against admission in the absence of expert opinion. Accordingly, under the record before us, we conclude that element of age in video clips 18 and 19 was appropriately decided by the jury.

¶ 29 Finally, Appellant argues that the imposition of 14 consecutive sentences created an illegal sentence, violating his constitutional right to be free from

double jeopardy[3] where, under the plain language of Section 6312(d), he committed but a single possessory offense warranting a single sentence. We disagree.

¶ 30 Section 6312(d), *supra*, criminalizes possession of a variety of materials—such as books, pamphlets, magazines, computer depiction, etc.—depicting a child engaged in or simulating a prohibited sexual act. Appellant asserts, therefore, that sentencing under Section 6312(d) must track possession of the medium itself and not the number of depictions contained in the medium. So, Appellant reasons, possession of one book of offending depictions would constitute one possessory offense, even if the book contained thousands of offending depictions. The same would hold true for pamphlets and magazines, presumably.

¶ 31 Assuming *arguendo* that Appellant is correct with respect to possession of books, magazines, and pamphlets, this does not change the fact that the statute expressly criminalizes the possession of "any ... computer depiction," not the possession of any computer hard-drive containing such depictions. Here, the record established that Appellant obtained each of the 14 video clips individually, at separate times, such that he possessed 14 separate computer depictions. It was thus appro-priate under Section 6312(d) to charge, convict, and sentence Appellant separately for each act of possessing each video clip, i.e., each medium, of child pornography. Under Section 6312(d) and given the separate acts of possession occurring in this case, merger doctrine is inapplicable.[4] *See Commonwealth v. Gatling*, 570 Pa. 34, 44, 807 A.2d 890, 897 (2002) (holding, in this context, that the court's interest "is to avoid giving criminals a 'volume discount' on crime.").

¶ 32 For all the foregoing reasons we affirm the judgment of sentence entered below.

¶ 33 Judgment of sentence is affirmed.

¶ 34 MUSMANNO, J. CONCURS IN RESULT.

---

3. For purposes of double jeopardy, the preliminary question is whether the facts on which the offenses are charged constitute one solitary criminal act. If the offenses stem from different criminal acts, there is no double jeopardy concern and merger analysis is not required. *Davidson*, 860 A.2d at 583.

4. On March 15, 2005, The Pennsylvania Supreme Court granted a petition for allowance of appeal from our decision in *Davidson*, supra, limited to answering the questions:
    Whether 18 Pa.C.S. § 6312(d) is unconstitutionally vague and overbroad?
    Did the General Assembly intend that a person charged under 18 Pa.C.S. § 6312(d) be subjected to individual counts for each piece of child pornography possessed?

If the General Assembly so intended, is it constitutional to impose separate punishments for each convictions?
*Commonwealth v. Davidson*, 582 Pa. 356, 871 A.2d 185 (2005). In *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa.Super.2006), we found our prior decision in Davidson binding as our high court has done no more than grant an appeal as to the constitutionality of Section 6312(d). As the Pennsylvania Supreme Court has yet to issue a decision in *Davidson* regarding the constitutionality of Section 6312(d), we too deem this Court's prior decision in *Davidson*, that Section 6312(d) is neither overbroad nor vague, binding.