J-S68025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ORLANDO MEJIAS-JIMINEZ, | : | |
| | : | |
| Appellant | : | No. 447 MDA 2017 |

Appeal from the Judgment of Sentence December 2, 2016
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0008404-2015

BEFORE:   LAZARUS, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                  **FILED JANUARY 17, 2018**

Appellant, Orlando Mejias-Jiminez, appeals from the Judgment of Sentence entered on December 2, 2016, in the York County Court of Common Pleas following his conviction of Indecent Assault and Corruption of Minors.[1]  We affirm.

The court convicted Appellant of the above charges on August 23, 2016, following a bench trial.[2]  On December 2, 2016, the court sentenced Appellant to a term of 6 to 23 months' incarceration and a concurrent term

---

[1] 18 Pa.C.S § 3126(a)(7) and 18 Pa.C.S. § 6301(a)(1)(i), respectively.

[2] The trial court has fully and correctly set forth the relevant facts and procedural history of this case in its Opinion in Support of Order.  Therefore, we have no reason to restate them and we adopt the facts and procedural history as set forth therein.  **See** Trial Ct. Op., 5/4/17, at 1-6.

---

\*   Retired Senior Judge assigned to the Superior Court.

of 5 years' probation. On December 12, 2016, Appellant filed a Post-Sentence Motion challenging the weight of the evidence and the Commonwealth's amendment of Appellant's Criminal Information during trial. The court denied Appellant's Motion on February 10, 2017. This timely appeal followed.[3]

Appellant raises the following two issues on appeal:

1. Whether the trial court erred when it found its verdict of guilty as to the charges of Indecent Assault and Corruption of minors was not against the weight of the evidence presented at trial?

2. Whether the trial court erred when it permitted the Commonwealth to amend the [I]nformation during trial.

Appellant's Brief at 4.

In his first issue, Appellant claims the verdicts were against the weight of the evidence.

The weight of the evidence is exclusively for the finder of fact, who "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). The trial judge may award a new trial only if the fact finder's "verdict is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009) (citations omitted). "Appellate review is limited to whether the trial judge's discretion

---

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." ***Commonwealth v. Ratushny***, 17 A.3d 1269, 1272 (Pa. Super. 2011) (citation omitted). Thus, "a trial court's denial of a post-sentence motion 'based on a weight of the evidence claim is the least assailable of its rulings.'" ***Commonwealth v. Sanders***, 42 A.3d 325, 331 (Pa. Super. 2012) (quoting ***Commonwealth v. Diggs***, 949 A.2d at 880.

Appellant argues that the court erred in finding the testimony of the victim and her mother more credible than that of Appellant and his family members. Appellant's Brief at 12-15. Appellant notes that the record is rife with inconsistent testimony about how often the victim spent the night at Appellant's home; when the incident giving rise to the instant charges occurred; and whether Appellant would have had an opportunity to be alone with the victim. ***Id.*** at 12-13, 15. Appellant disputes the court's characterization of the inconsistencies as "insignificant." ***Id.*** at 13. Appellant also complains that the court placed too much weight on Appellant's admission that he kissed the victim's ear and neck and that he had "made a mistake." ***Id*** at 14. Last, Appellant argues that the trial court should have given more weight to his family members' testimony. ***Id.*** at 15.

Here, with respect to the inconsistent testimony about how often the victim stayed overnight at Appellant's home, the trial court explained that this inconsistency was "insignificant as it [was] not central to the criminal

episode itself and is explainable by the passage of time and the youthful ages of several of the witnesses." Trial Ct. Op. at 7.

The trial court explained its decision to give little weight to Appellant's family members' testimony that Appellant was never alone with the victim. The court found Appellant's family members not credible noting their motive to testify favorably to Appellant and the improbability that each of those witnesses was in the presence of the victim each time, and for the entire time, the victim was in Appellant's residence. *Id.* at 7-8. The court also noted that Appellant admitted that he told a police detective that he had had the opportunity to be alone with the victim. *Id.* at 8.

Last, the court opined that it credited the victim's testimony because "her account of the sexual assault was clear and detailed and consistent with prior accounts." *Id.* at 8. The victim's testimony was also "corroborated by her report to her mother[.]" *Id.* The court also found compelling Appellant's apology for his conduct and his admission to "much of the conduct surrounding the assault described by the victim" and concluded that Appellant's acknowledgment that he "made a mistake" supported the victim's testimony. *Id.*

Our review of the record confirms that the trial court properly exercised its discretion in denying Appellant's Motion for Post-Sentence Relief as to Appellant's weight of the evidence claim. Having found no "palpable abuse of discretion," we will not disturb the court's verdicts. *Ratushny*, *supra* at 1272.

- 4 -

In his second issue, which Appellant characterizes as challenging the court's decision to permit the Commonwealth to amend the Criminal Information, Appellant is actually raising a *Devlin*[4] claim.  *See* Appellant's Brief at 15-20.  He alleges that the Commonwealth violated his due process rights by failing to present sufficient evidence of the date on which he committed the crimes with which the Commonwealth had charged him.

With respect to claims of this sort, this Court explained:

> We consider *Devlin* to be the polestar in our assessment of whether the appellant's due process argument is to give way in favor of the child-victim's right to have her assault brought to justice.  In *Devlin*, our Supreme Court opted for a balancing approach to resolve conflicting interests of the accused vis-a-vis the victim when it came to the specificity required to be proven as to the time-frame of the alleged crime.  It wrote:
>
> > Here, as elsewhere, [t]he pattern of due process is picked out in the facts and circumstances of each case. Due process is not reducible to a mathematical formula. Therefore, we cannot enunciate the exact degree of specificity in the proof of the date of a crime which will be required or the amount of latitude which will be acceptable.  Certainly the Commonwealth need not always prove a single specific date of the crime.  **Any leeway permissible would vary with the nature of the crime and the age and condition of the victim balanced against the rights of the accused.**

*Commonwealth v. Fanelli*, 547 A.2d 1201, 1204 (Pa. Super. 1988) (en banc), *abrogated on other grounds by* *Commonwealth v. Hutchinson*, 556

---

[4] *Commonwealth v. Devlin*, 333 A.2d 888 (Pa. 1975).

A.2d 370 (Pa. 1989), *quoting* **Devlin**, 333 A.2d at 892 (internal quotation marks and citations omitted) (emphasis added).

In support of this issue, Appellant asserts that the Information charged him with offenses allegedly committed on January 1, 2013, but that the Commonwealth's evidence indicated that the incident occurred either in the summer of 2012, or the fall of 2013. Appellant argues that the court's decision "hamstrung" him because he had witnesses available to testify that he did not commit the alleged criminal acts on the date alleged in the Criminal Information. Appellant's Brief at 19-20. Thus, Appellant claims that the court erred in denying his Motion for a Directed Verdict.

Contrary to Appellant's averments, the Commonwealth alleged that Appellant committed the crimes charged "on or about January 1, 2013." Criminal Information, 10/27/15, at 1. In addressing Appellant's Motion for a Directed Verdict, the trial court noted that it denied the Motion because, "the fall 2012 time period testified to by the minor victim was 'sufficiently close to January 1st of 2013.'" Trial Ct. Op. at 9.

The Honorable Christy H. Fawcett has authored a comprehensive, thorough, and well-reasoned Opinion, supporting this conclusion and ably distinguishing the instant facts from those in **Devlin**. **See id.** at 9-12 (concluding that the victim's testimony placed the date of the offense as before June 2013 and that the exact date of the offense was irrelevant for purposes of Appellant's defense). We adopt that portion of the trial court's

Opinion as our own and affirm on the basis of that Opinion. The parties are instructed to annex the trial court's May 4, 2017 Opinion to all future filings.

Judgment of Sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/17/2018

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :    CP-67-CR-8404-2015

       v.                  :

ORLANDO MEJIAS-JIMINEZ       :
Defendant                    :

## OPINION IN SUPPORT OF ORDER PURSUANT TO Pa.R.A.P. 1925(a)

Appellant Orlando Mejias-Jiminez appeals to the Superior Court of Pennsylvania from the Judgement of Sentence issued on December 2, 2016. Pursuant to Pa.R.A.P 1925(b), the trial court directed Appellant to file a Concise Statement of Matters Complained of on Appeal. On March 31, 2017, Appellant filed the statement. The trial court now issues this 1925(a) Opinion.

## Procedural History

On or about December 23, 2015, the Commonwealth charged Appellant with indecent assault, in violation of 18 Pa.C.S.A. § 3126 (a)(7) (Count 1); and corruption of minors, in violation of 18 Pa. C.S.A. § 6301 (a)(1) (Count 2). Following a non-jury trial on August 23, 2016, the trial court convicted Appellant on both counts. On December 2,

2016, the trial court sentenced Appellant to a term of six to 23 months' imprisonment on Count 1 and five years' probation on Count 2 as well as the costs of prosecution. On December 12, 2016, Appellant filed a Motion for Post-Sentence Relief. On February 10, 2017, the trial court issued a written opinion denying the post-sentence motion.

## Issues for Appeal

1. Whether alleged conflicts in the testimony resulted in verdicts that were against the weight of the evidence?

2. Whether the trial court improperly permitted the Commonwealth to amend the information during trial?

## Summary of the Facts

During trial, the victim testified that she was related to Appellant's family and had known Appellant since she was "a little kid." (Notes of Testimony, 8/23/2016, 10-11.)[1] Prior to the criminal incident, she went to his residence "[a]lmost every weekend." (N.T. 11.) She did not specify whether she stayed overnight each time she visited the residence. When she did stay overnight at the residence, however, she and her cousin slept on the floor in the living room. (N.T. 11-12.) At approximately 11:30 p.m. on the night in question, Appellant was

---

[1] Hereinafter "N.T. ___."

2

watching television in the living room and the victim asked him to help her "move stuff" so the victim and her cousin could go to sleep. (N.T. 12, 23.)

According to the victim, Appellant "has this little game that he tickles you. He started tickling me and I kept like trying to get up, but he kept pushing me back and telling me to stop...then he started kissing my neck and rubbing his hands all over my body." (N.T. 12.) Asked what parts of her body Appellant touched, the victim specified "[my] butt, my back, my breast, and my thighs." (N.T. 14.) Appellant squeezed the victim's buttocks over her clothing and squeezed her breasts under her shirt but over her bra. (N.T. 15-16.) He rubbed and squeezed the inside and outside of her thighs over her clothing. (N.T. 16.) Appellant was "still kissing" the victim. (N.T. 18.) He instructed the victim to "stop moving." (N.T. 16.)

Appellant ceased when, eventually, the victim's family member came downstairs. (N.T. 17.) The victim estimated that the incident occurred over approximately 35 minutes. (N.T. 17.)

Later, the victim told her mother what had happened. (N.T. 19.) The victim and her mother confronted Appellant. Appellant, however,

3

told them "that nothing happened and that if he really did anything wrong, that he apologizes in advance." (N.T. 19-20.)

Similarly, the victim's mother testified that the victim reported the incident to her sometime in the winter. (N.T. 30, 35.) When confronted, Appellant told the victim's mother that "they were playing" and "he did touch her, but they were both playing..[h]e said he was tickling her." (N.T. 30-31.)

York City Police Detective Kyle Hower testified that when he interviewed him, Appellant "admitted at one point to kissing the victim behind the ear and then later admitted to kissing her on the neck." (N.T. 36, 39.) Although Appellant denied criminal conduct, "[h]e did admit to playing the tickle game with her where he would tickle her on her side and on her body, but he specifically made it clear that it was not on her breasts or her vagina." (N.T. 40.) He said he did this "to calm her down...because she was nervous about staying the night." (N.T. 40.) Appellant admitted "to making a mistake." (N.T. 41.)

Detective Hower told Appellant to instruct family members to contact him to provide information about the events in question. (N.T. 42.) However, no family members contacted him. (Id.) Appellant

4

claimed that he had conveyed the message to family members. (N.T. 67.) A family member, however, denied that Appellant transmitted the message from the detective. (N.T. 58.)

Appellant's 16-year-old stepdaughter testified that the victim stayed overnight at her house one time; the witness and the victim were always in one another's presence; and the victim had never been alone in the house with Appellant. (N.T. 52.) She claimed that all of the several people who lived in the house were always in the same room together at all times. (N.T. 54.)

Another stepdaughter testified that she never saw the victim and Appellant alone in the residence. (N.T. 56-57.)

Appellant testified that the victim slept overnight at his house three times. (N.T. 63.) All three times were prior to January 1, 2013. (Id.) He denied any sexual contact with the victim. He admitted, however, that on an occasion in the fall of 2012, the victim wanted to go home rather than stay the night and he kissed her to try "to gain her trust" so that she would stay. (N.T. 65.) He and the victim "were playing games" and Appellant "would be tickling her" and he "did kiss her neck." (N.T. 66.) He claimed that during the confrontation that

5

occurred between him, the victim, and the victim's mother, the victim denied that he had ever touched her body. (N.T. 68.) He acknowledged that he told the detective he had made a mistake and that he apologized to the victim and her mother. (N.T. 71.) Further, he admitted to telling Detective Hower that he had had the opportunity to be alone with the victim. (N.T. 72.)

## Discussion

### 1. The trial court properly held that the verdict was not against the weight of the evidence.

Appellant first alleges that the verdict was against the weight of the evidence because there was a conflict in the testimony. (Defendant's 1925(b) Statement, 1.) Specifically, he argues that the victim testified that the criminal incident occurred "over the course of one evening" but defense witnesses "directly contradicted said testimony." (Id.)

A motion for a new trial alleging the verdict was against the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." Commonwealth v. Sullivan, 820 A.2d 795, 806 (Pa. Super. 2003)(citations omitted). Thus, in deciding the motion, the trial court was not obligated to view the evidence in the light most favorable

6

to the Commonwealth but should award a new trial "when the jury's verdict is contrary to the evidence as to shock one's sense of justice" thereby making "the award of a new trial imperative so that right may be given another opportunity to prevail." Id. (citation and quotation omitted). Stated differently, for a new trial, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." Id.

Here, witnesses did present some conflicting testimony, including testimony concerning how often the victim stayed at Appellant's residence. The victim testified she visited there almost every weekend for years but did not specify how often she stayed overnight; a family member testified the victim stayed overnight one time; and Appellant said she stayed overnight three times. (N.T. 11, 51, 63.)

This discrepancy in testimony, however, is insignificant as it is not central to the criminal episode itself and is explainable by the passage of time and the youthful ages of several of the witnesses.

In addition, contrary to the victim's testimony, two members of Appellant's family testified that Appellant was never alone with the victim. (N.T. 52, 54, 56-57.) The trial court, however, attached little

7

weight to the family members' testimony. It defies common sense that each of those witnesses was in the presence of the victim each time—and the entire time—she was in Appellant's residence. Moreover, the family members had a motive to testify favorably to Appellant. Finally, Appellant admitted that he told the detective he had the opportunity to be alone with the victim. Thus, his testimony arguably contradicted the family members' representations.

The trial court found the victim's testimony credible because her account of the sexual assault was clear and detailed and consistent with prior accounts. Moreover, it was corroborated by her report to her mother which caused the mother to confront Appellant. The mother's testimony about the event—as well as Appellant's testimony about the same event—provided additional corroboration. Specifically, although Appellant did not expressly admit to criminal activity, he apologized for his conduct. Finally, Appellant's statement to Detective Hower in which he admitted much of the conduct surrounding the assault described by the victim and acknowledged that he "made a mistake" supports the victim's testimony. See Commonwealth v. Andrulewicz, 911 A.2d 162 (Pa. Super. 2006)(citation and quotation omitted)

8

("uncorroborated testimony of a sexual assault victim, if believed by the trier of facts, is sufficient to convict...")

Accordingly, the verdict was not so contrary to the evidence as to shock the trial court's sense of justice.

### 2. The trial court did not improperly permit the Commonwealth to amend the information during trial.

Next, Appellant claims that he is entitled to a new trial because the trial court improperly permitted the "Commonwealth to amend the information and present evidence that the alleged crime occurred at a time and date not specified in the criminal information." (Appellant's 1925(b) Statement, 2. )

Here, the information charged Appellant with committing indecent assault and corruption of a minor "on or about Tuesday, the 1st day of January, 2013." At the conclusion of the Commonwealth's case, Appellant moved for a directed verdict of acquittal, alleging that the evidence "sounds like the incident occurred either in the summer of 2012 or the fall of 2013." (N.T. 46.) The trial court denied the motion on the basis that the fall 2012 time period testified to by the victim was "sufficiently close to January 1st of 2013."

9

The Pennsylvania Rules of Criminal Procedure provide, in pertinent part, that an information charging a criminal offense shall be valid and sufficient if it contains:

> (3) the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient.

Pa.R.Crim.P. 560(B)(3).

Time is not of the essence for the crimes of indecent assault and corruption of a minor. See Commonwealth v. Shirey, 481 A.2d 1314, 1328 (Pa. Super. 1984). Moreover, the crime occurred within the time period required by the statute of limitations. See 42 Pa.C.S.A. § 5552.

Nonetheless, "It is the duty of the prosecution to fix the date when an alleged offense occurred with reasonable certainty....The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense." Commonwealth v. Riggle, 119 A.3d 1058, 1069 (Pa. Super. 2015) (quotation and citation omitted).

However, "due process is not reducible to a mathematical formula and the Commonwealth does not always need to prove a specific date of

10

an alleged crime." Commonwealth v. Koehler, 914 A.2d 427, 436 (Pa. Super. 2006), citing and quoting Commonwealth v. Devlin, 333 A.2d 888, 892 (Pa. 1975). The amount of leeway permissible will "vary with the nature of the crime and the age and condition of the victim, balanced against the rights of the accused." Id.

In Devlin, the Supreme Court reversed Appellant's conviction. The Court found that charging that the crime occurred sometime during a 14-month period constituted "an egregious encroachment upon the appellant's ability to defend himself." Id. at 892. The Supreme Court ruled that lack of a specific date precluded Appellant from presenting evidence that (1) the victim's behavior after the incident was inconsistent with the extremely severe assault; and (2) physical and emotional trauma would have resulted from such an assault. Id. at 891.

Here, the victim's testimony was that the criminal incident occurred when she was 12 years old, which would have placed the time as prior to June 2013. (N.T. 9.) Appellant himself testified that the tickling incident that he described—but did not admit to being criminal in nature—occurred in the fall of 2012. (N.T. 65.) This time period is relatively close in time to the January 2013 date and certainly does not

11

approach the 14-month time frame that the Supreme Court found problematic in <u>Devlin</u>. Moreover, the defense in this case was not an alibi defense. Nor did Appellant attempt to present evidence that the victim's behavior after a certain time was inconsistent with the behavior of a sexual assault victim. <u>See</u> <u>Devlin</u>, 333 A.2d at 892.

Appellant admitted to an incident during which much of the behavior described by the victim occurred. He denied, however, that the behavior crossed the line to criminality. Defense witnesses testified that the victim and Appellant were <u>never</u> alone in Appellant's house at any time and thus, the sexual assault could never have taken place. Thus, the exact date on which the assault occurred was irrelevant for purposes of the defense presented.

Accordingly, the "on or about" language of the information provided sufficient notice to Appellant and no due process violation occurred.

## Conclusion

For all these reasons, the trial court respectfully requests this Court to affirm Appellant's convictions for indecent assault and corruption of minors.

_Christy D. Fawcett_
Christy H. Fawcett
Judge of the Court of Common Pleas

13