J-S46010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTHONY WRIGHT | |
| Appellant | No. 1918 EDA 2014 |

Appeal from the Judgment of Sentence June 30, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000815-2013

BEFORE:  MUNDY, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUNDY, J.:                   **FILED AUGUST 12, 2015**

Appellant, Anthony Wright, appeals from the June 30, 2014 judgment of sentence of two and one-half to five years' imprisonment, followed by a maximum of five years' probation, imposed after a jury found him guilty of one count of robbery as a second-degree felony.[1]  Contemporaneously with this appeal, Appellant's counsel has filed a petition to withdraw and an **Anders** brief, stating that the appeal is wholly frivolous.[2]  After careful review, we affirm the judgment of sentence and grant counsel's petition to withdraw.

The trial court summarized the relevant facts as follows.

_____

[1] 18 Pa.C.S.A. § 3701(a)(1)(iv).

[2] **Anders v. California**, 386 U.S. 738 (1967).

On September 21, 2012 at about 1:30am, Tina Freeman brought her car to a stop underneath a streetlight on Germantown Avenue to remove a parking ticket from her windshield. She was approached by a man who asked, "Can I help you with that?" This man was later identified by Ms. Freeman as [Appellant]. Feeling nervous, Ms. Freeman responded that she did not need help and quickly attempted to return to the driver's seat of her vehicle. At that time, [Appellant] wedged himself between Ms. Freeman's car door and her leg and began pulling at her clothes and hitting her. [Appellant] hit Ms. Freeman on the left side of her chest area toward her shoulder and grabbed at her arms, thereby causing bruises. He also struck the back of her head and pulled her shirt down. Ms. Freeman testified that she was afraid [Appellant] would rape her. Eventually, [Appellant] reached behind Ms. Freeman to the passenger seat of her car and grabbed her tote bag, which contained her phone, makeup, cash, credit cards, driver's license, CDs, and an iPod touch engraved with the words "Happy Birthday Tia." At trial, Ms. Freeman testified that [Appellant]'s face was about eight inches from her during the incident and that she was able to get a good look at him. She stated that he was wearing a blue long-sleeved shirt and jeans and that he had tiny braids.

After their altercation, Ms. Freeman testified that [Appellant] ran down the street laughing. Ms. Freeman also testified that nearby there was another man whom she approached and asked why he had not helped her. Ms. Freeman described this man as follows: "darker black skin, longer braids that shot out, and an apple face, very round cheeks, heavier-set." This man was later identified as Bryant Davis. Shortly after the incident, Ms. Freeman flagged down a police vehicle. She briefly followed the officers in an unsuccessful attempt to locate the man who had robbed her. No report was filed at that time.

Bryant Davis also testified at trial. Mr. Davis testified that he went to a bar in the Germantown area with [Appellant] at about 11:00pm on September 20, 2012. Mr. Davis stated that he left the bar between 1:00am and 1:30am, a minute or so after [Appellant]. Mr. Davis stated that when he emerged from the bar, he witnessed [Appellant] running down the street holding an object that looked like a pocketbook. At this point, Mr. Davis stated that a woman came up to him on the street in a panic asking why he did not help her. Mr. Davis stated he went back in the bar for another thirty minutes or so before he left. After his departure at about 2:00am, he spotted [Appellant] standing outside a Checkers down the street and gave him a ride. Mr. Davis asked [Appellant] what had happened, and [Appellant] stated that he had robbed a lady.

At about 5:40pm later that day[,] Mr. Davis was pulled over by [p]olice [o]fficer Colin Goshert for a traffic violation. As he approached the vehicle on foot, Officer Goshert noticed Mr. Davis dip below his seat, so he removed him from the vehicle. Mr. Davis was frisked, and the front area of his car was searched. A BB gun was recovered underneath his seat, and a phone and an iPod touch with the engraving "Happy Birthday Tia" were recovered from his center console. Mr. Davis was arrested as a suspect in the robbery of Ms. Freeman and was questioned with regard to his possession of the stolen property. He said that he did not know to whom the items belonged and told officers the story of what had occurred earlier that morning. He also made an identification of [Appellant]. Mr. Davis was eventually charged with receiving stolen property[3]; he was found guilty and was placed on probation for a period of one year.

_____

[3] 18 Pa.C.S.A. § 3925(a).

Officer Goshert testified that he called "home" from the recovered cell phone and was able to reach Ms. Freeman. Officer Goshert requested that Ms. Freeman come to the station to be interviewed regarding the robbery earlier that morning. When Ms. Freeman arrived at the police station, she gave a statement and was shown a photo array which included a photo of Mr. Davis. Ms. Freeman did not make an identification, but testified that in the array she saw a photo of someone who looked like the individual who was on the street at the time of the incident, but not the person who attacked her. There is no record in any of the police paperwork that she told this piece of information to the detective who interviewed her.

On September 24, 2012, Ms. Freeman was called back to the police station to view another photo array. This photo array included a photo of both [Appellant] and Bryant Davis. Ms. Freeman identified [Appellant] as the individual who robbed her. Detective Daphne Smith, the officer who showed Ms. Freeman the second photo array, also indicated that Ms. Freeman pointed out Mr. Davis as the man whom she approached on the street that evening, but this again was not recorded. Ms. Freeman also attended a preliminary hearing on October 31, 2012. At the hearing she was not permitted to see [Appellant] and was required to participate in a prison lineup, where Ms. Freeman identified [Appellant] as her assailant. Ms. Freeman also made an in-court identification of [Appellant] at the rescheduled preliminary hearing on January 17, 2013 and identified [Appellant] at trial as the man who robbed her. Ms. Freeman indicated that she was 99% sure of her identification in the photo array and that she was 100% sure of her in-person identification of [Appellant].

The Commonwealth also presented testimony from Officer Joseph Cahill, who arrested [Appellant] on October 11, 2012. Officer Cahill described [Appellant] as five foot seven, about 140 pounds, and having small cornrows that were close to the

- 4 -

back of his head and neck. The Commonwealth also presented testimony from Detective Bill Urban, who conducted the lineup and testified to Ms. Freeman's identification of [Appellant]. Detective Urban testified that Ms. Freeman identified [Appellant] from the lineup without hesitation.

[Appellant] called Ikea Nalley, [Appellant]'s girlfriend, as an alibi witness. Ms. Nalley testified that she was watching movies with [Appellant] from 8:00pm or 9:00pm until midnight on the evening of September 20, 2012. She said that she remembered that day in particular because it was their "anniversary day," and they celebrated this day each month by spending time together. Ms. Nalley stated that she and [Appellant] went to sleep around midnight that evening and that when she awoke at around 3:00am [Appellant] was still asleep. Ms. Nalley testified that she would have been aware if [Appellant] left at any point because, "I sleep on him."

Ms. Nalley's credibility was called into question by the Commonwealth on various occasions. First, the Commonwealth put a witness on the stand for rebuttal, Officer Joseph Czepiel, to testify that the address at which Ms. Nalley stated she and [Appellant] were located on the evening of the incident did not exist. Ms. Nalley later made a correction to the address on surrebuttal by stating that she had made a mistake and that she only resided at that home for "maybe a month." There was also question as to when and to whom Ms. Nalley first alerted any defense attorney or law enforcement officer that she was with [Appellant] on the night in question. Ms. Nalley claimed that she told an investigator who was hired by [Appellant]'s former attorney about the alibi, but she was not interviewed by a detective until approximately one week before trial. Assistant District Attorney Omar Graham testified that he handled the preliminary hearing on January 17, 2013. He remembered that Ms. Nalley was not sequestered at that hearing and that Ms. Freeman reported to him that Ms. Nalley

and people with her were making faces at Ms. Freeman and were acting in a manner which intimidated Ms. Freeman. As a result, the [trial] [j]udge issued an order requiring Ms. Nalley to stay away from the complaining witness.

Trial Court Opinion, 11/18/14, at 1-6 (quotations in original, citations omitted).

By criminal information filed on January 24, 2013, the Commonwealth charged Appellant with one count each of robbery as a first-degree felony, theft by unlawful taking, receiving stolen property, simple assault, and recklessly endangering another person.[4] On June 30, 2014, after a jury trial, the jury found Appellant guilty of robbery as a second-degree felony, a lesser-included offense. The jury found Appellant not guilty of robbery as a first-degree felony. The Commonwealth *nolle prossed* the remaining charges. That same day, the trial court sentenced Appellant to two and one-half to five years' imprisonment, followed by a maximum of five years' probation. Appellant did not file a post-sentence motion. On July 7, 2014, Appellant filed a timely notice of appeal.[5]

In his **Anders** Brief, counsel has raised the following issue for our review.

---

[4] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), 3925(a), 2701, and 2705, respectively.

[5] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

> Was the evidence sufficient to support [A]ppellant's conviction for robbery?

*Anders* Brief at 3.

"When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010) (citation omitted). Additionally, an *Anders* brief shall comply with the requirements set forth by our Supreme Court in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

> [W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 361.

Pursuant to *Commonwealth v. Millisock*, 873 A.2d 748 (Pa. Super. 2005), and its progeny, counsel seeking to withdraw on direct appeal must meet the following obligations to his or her client.

> Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: (1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points

that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief.

**Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014) (internal quotation marks and citation omitted). "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa. Super. 2007) (*en banc*), *quoting* **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa. Super. 2004). Further, "this Court must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote and citation omitted).[6]

_____

[6] Speaking for myself only, I disagree with **Flowers**' interpretation of case law to impose a duty on this Court, when reviewing an **Anders** brief, to comb the record for issues of arguable merit that counsel did not raise. **See Commonwealth v. King**, 57 A.3d 607, 633 n.1 (Pa. 2012) (Saylor, J., concurring) (discussing the precedent for a special concurrence by the author of the majority opinion); **Flowers**, **supra**.

In introducing this Court's duty of independent review, the majority in **Flowers** acknowledged, "[n]either the Pennsylvania Supreme Court nor an en banc panel of this Court has explicitly discussed this issue." I agree with Judge Strassburger's dissent in **Flowers**, explaining that our Supreme Court's decisions do not require this approach. **Flowers**, **supra** at 1251-1252 (Strassburger, J., dissenting). Further, this approach causes disparate treatment of criminal defendants, with this Court acting as appellate counsel when counsel seeks to withdraw, but not when counsel does not seek to

*(Footnote Continued Next Page)*

- 8 -

In this appeal, we conclude that counsel's **Anders** brief complies with the requirements of **Santiago**. First, counsel has provided a procedural and factual summary of the case with references to the record. Second, counsel advances relevant portions of the record that arguably support Appellant's claims on appeal. Third, counsel concluded, "this appeal would be wholly frivolous." **Anders** Brief at 16. Lastly, counsel has complied with the requirements set forth in **Millisock**. As a result, we proceed to conduct an independent review to ascertain if the appeal is indeed wholly frivolous.

The sole issue counsel raises on Appellant's behalf is the sufficiency of the evidence to support the robbery conviction.[7] **Anders** Brief at 13. We begin by noting our well-settled standard of review. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at

---

*(Footnote Continued)* _____

withdraw. **Id.** at 1252 (Strassburger, J., dissenting); **see also Commonwealth v. Koehler**, 914 A.2d 427, 438 (Pa. Super. 2006) (explaining "it is not this Court's duty to become an advocate for an appellant and comb through the record to assure the absence of trial court error[]"), *appeal denied*, 961 A.2d 858 (Pa. 2008). Moreover, a review by this Court for all potential issues renders the requirement of counsel to identify issues arguably supporting an appeal and the opportunity afforded to the appellant to raise issues *pro se* mere superfluities. **See Commonwealth v. Thomas**, 511 A.2d 200, 204 (Pa. Super. 1986). For these reasons, I disagree with **Flowers**. However, we are constrained to apply it. **See Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006) (noting that a panel of this Court cannot overrule a prior decision of this Court), *appeal denied*, 946 A.2d 686 (Pa. 2008), *cert. denied*, 555 U.S. 881 (2008).

[7] Appellant did not respond to counsel's petition to withdraw or raise any additional issues for our review.

trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." *Commonwealth v. Patterson*, 91 A.3d 55, 66 (Pa. 2014) (citation omitted), *cert. denied*, *Patterson v. Pennsylvania*, 135 S. Ct. 1400 (2015). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we must review "the entire record … and all evidence actually received[.]" *Id.* (internal quotation marks and citation omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orie*, 88 A.3d 983, 1014 (Pa. Super. 2014) (citation omitted), *appeal denied*, 99 A.3d 925 (Pa. 2014). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Diamond*, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied, Diamond v. Pennsylvania*, 135 S. Ct. 145 (2014).

Here, Appellant was convicted of robbery as a second-degree felony. "A person is guilty of robbery if, in the course of committing a theft, he … inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury."  18 Pa.C.S.A. § 3701(a)(1)(iv).

Appellant presents two challenges to the sufficiency of the evidence. Specifically, he argues that the Commonwealth failed to present sufficient evidence establishing that he committed the robbery or that he caused, or threatened, bodily injury to Freeman.  Viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we conclude there was ample evidence to support Appellant's conviction for robbery.

First, we conclude there was sufficient evidence to identify Appellant as the perpetrator of the robbery.  This Court has previously held that a positive identification by one eyewitness is satisfactory to overcome a challenge to the sufficiency of the Commonwealth's proof of identity.  *See Commonwealth v. Patterson*, 940 A.2d 493, 502 (Pa. Super. 2007) (concluding the evidence was sufficient where "the complainant testified positively and without qualification that [the defendant] perpetrated the offenses[]"), *appeal denied*, 960 A.2d 838 (Pa. 2008), *citing Commonwealth v. Wilder*, 393 A.2d 927, 928 (Pa. Super. 1978).  Here, Freeman, the complainant, testified that on September 21, 2012, between 1:00 and 1:30 a.m., after she pulled her vehicle over to remove a parking ticket from her windshield, Appellant approached her and asked if she

- 11 -

needed help. N.T., 4/28/14, at 9-12. Appellant then assaulted Freeman, took her tote bag from the passenger's side of her vehicle, and fled down the street on foot. *Id.* at 12-21. Freeman testified that she had a clear view of Appellant's face during the attack, and she later identified him as the assailant in a photo array, a prison lineup, at the preliminary hearing, and at trial. *Id.* at 20, 34, 36-37. At trial, Freeman stated that she was "100 percent sure" that Appellant was "absolutely the person that attacked me in my car." *Id.* at 38. Freeman's unequivocal identification of Appellant as the assailant is sufficient evidence to enable the jury to conclude beyond a reasonable doubt that Appellant committed the robbery. *See Patterson*, *supra*.

The defense presented one alibi witness, Ikea Nalley, Appellant's girlfriend. She testified that she and Appellant fell asleep around midnight while watching movies on the night in question, which she remembered because the 20th of each month was their anniversary night. N.T., 4/28/14, at 134-135. She further stated that she woke up around 3:00 a.m., saw Appellant still asleep, and went back to bed. *Id.* at 135. In light of the testimony of Freeman and Davis, to whom Appellant admitted he committed the robbery, the jury was free to reject Nalley's proffered alibi and conclude Appellant was guilty of robbery beyond a reasonable doubt. *See Orie*, *supra*. We will not reweigh the evidence. *Id.*

Next, we conclude there was sufficient evidence that Appellant threatened to, and actually did, inflict bodily injury on Freeman. The "bodily injury" required to prove second-degree robbery is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301; *see also Commonwealth v. Thomas*, 546 A.2d 116, 118 (Pa. Super. 1988), *appeal denied*, 554 A.2d 509 (Pa. 1989). Here, Freeman testified that Appellant attacked her when she tried to retreat into her car as he approached her. He pushed her into the vehicle, pulling at her clothes and hitting her in the chest and head. N.T., 4/28/14, at 12-17. Appellant struck Freeman at least three times in the chest and multiple times in the back of the head with a closed fist. *Id.* at 14, 17. Freeman sustained defensive bruises to her arms. *Id.* at 15. During the attack, Appellant pinned Freeman down so that she could not move her legs. *Id.* at 16. Freeman explained that she thought Appellant was attempting to rape her because he was trying to remove her clothes and position her on her back in the car. *Id.* at 18. The struggle lasted for one to two minutes before Appellant grabbed Freeman's tote bag from the car and fled on foot. *Id.* at 19-20. This evidence is sufficient to enable the jury to conclude that Appellant inflicted bodily injury on Freeman beyond a reasonable doubt. *See Watley*, *supra*.

Based on the foregoing, we agree with counsel that this appeal is without merit, and the Commonwealth produced sufficient evidence for the jury to find Appellant guilty of robbery beyond a reasonable doubt. Further,

after conducting an independent review of the record, we conclude there are no additional, non-frivolous issues overlooked by counsel. *Flowers*, *supra* at 1250. As a result, we agree with counsel's assessment that this appeal is wholly frivolous. Therefore, we affirm the June 30, 2014 judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2015