J-A24019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHANNON LAMAR THOMAN | : | |
| | : | |
| Appellant | : | No. 994 MDA 2017 |

Appeal from the Judgment of Sentence Entered February 3, 2016
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0003498-2014

BEFORE:  OTT, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: JANUARY 28, 2019**

A jury convicted Shannon Lamar Thoman of seven counts of sexual abuse of children - child pornography.[1] He now appeals the judgment of sentence entered on February 3, 2016. Thoman raises a **Batson**[2] claim; challenges the sufficiency of the evidence; and maintains that the testimony from the assigned detective on the case was inadmissible because it was misleading and overwhelmed the jury. We affirm on the basis of the trial court opinion.

The trial court aptly summarized the relevant procedural history and facts of this case. **See** Trial Court Opinion ("TCO"), filed December 28, 2017,

---

[1] 18 Pa.C.S.A. § 6312(d).

[2] **Batson v. Kentucky**, 476 U.S. 79 (1986).

at 5-10. Therefore, we do not restate them and instead briefly note that photographs of nude minors were found on hard drives belonging to Thoman.

The trial court rejected all of Thoman's claims. First, it reviewed his **Batson** claim and concluded "we do not believe that trial counsel made a record that addressed the inquiries that must be made for a **Batson** challenge. Again, such a failure *precludes* appellate review of any **Batson** challenges." **Id.** at 13 (emphasis in original).

Next, it reviewed his challenges to the sufficiency of the evidence and concluded that they were all meritless. It explained that the evidence was sufficient to satisfy the convictions for child pornography despite Thoman's arguments that the Commonwealth did not prove that the depictions were for sexual stimulation or gratification; that he knowingly possessed the depictions; and that the minors in the photographs were under the age of 18. The trial court opined that the photographs "depict[ed] lewd exhibition of the genitals or nudity that was produced for sexual stimulation" and the "jurors could reasonably conclude that the photos in question met the definition of a [`]prohibited sexual act[']" within the statute. **Id.** at 17. It also explained that because a "timely objection was [not] raised regarding" the issue of the age of the minors in the photographs, Thoman waived appellate review of the issue. **Id.** at 20. Regarding the argument of his knowing possession of the photographs, the court stated that Thoman's argument is a challenge to the weight and not the sufficiency of the evidence. **Id.** at 27. However, it nonetheless concluded that because "[its] sense of justice was not shocked,

the jury's verdict should remain undisturbed." *Id.* at 28. Thoman also challenged the testimony of the investigating detective, claiming that his testimony was misleading and confused the jury. The trial court also rejected this argument, stating "the jury was well aware as to how many photos [Thoman] was alleged to possess," and "because the jury only needed to determine if [Thoman] possessed the images he was charged with possessing," the testimony did not mislead the jury. *Id.* at 30, 31. Additionally, even if the jury was confused by the testimony, the court concluded the photographs "recovered from the loose hard drive, Dell laptop, and Gateway laptop w[ere] overwhelming." *Id.* at 31. We agree and also note that Thoman waived this issue by failing to develop this argument in his brief. *See Commonwealth v. Wilson*, 147 A.3d 7, 15 (Pa.Super. 2016) ("Where an appellant offers no citation to pertinent case law or other authority in support of an argument, the claim is waived").

When reviewing a challenge to the sufficiency of the evidence, we are "required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Neysmith*, 192 A.3d 184, 189 (Pa.Super. 2018) (citation omitted). Our standard of review is *de novo* and our scope of review is plenary. *Id.*

After a thorough review of the certified record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of the

Honorable Michael E. Bortner, which we adopt and incorporate herein. **See**

TCO at 11-32.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/28/2019

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH | : | CP-67-CR-0003498-2014 |
| | : | |
| v. | : | |
| | : | |
| SHANNON LAMAR THOMAN, | : | |
| **Defendant/Appellant** | : | |

COUNSEL OF RECORD:

Thomas L. Kearney, III, Esquire  
District Attorney of York County

Barbara Jo Entwistle, Esquire  
Counsel for Defendant

## OPINION IN SUPPORT OF ORDER PURSUANT TO RULE 1925(a) OF THE RULES OF APPELLATE PROCEDURE

The Court received a Notice of Appeal, docketed on June 23, 2017, that Shannon L. Thoman, by and through his counsel, appeals to the Superior Court of Pennsylvania this Court's order of June 1, 2017. The Court has reviewed the record. The Court now issues this opinion in support of our June 1, 2017 order.

## I. Procedural History

The Appellant's trial by jury began on November 2, 2015 and, at the conclusion of that trial, the jury returned a verdict of guilty on seven counts of possession of child pornography.[1] Sentencing was held on February 3, 2016. On Count 2, the Appellant was sentenced to eleven-and-a-half to twenty-three months in York County Prison. The Appellant received one year of probation on each of the other six counts, numbered as Counts 3, 4, 5, 6,

---

1 17 Pa.C.S.A. 6312(d)

1

7, and 9. Each of the probationary counts ran consecutive to one another and to the sentence of confinement on Count 2.

On November 21, 2016, the Appellant filed a *pro se* Post-Conviction Relief Act (hereinafter: PCRA) petition. Subsequently, the Appellant obtained the legal representation of Barbara Jo Entwistle, Esquire, who, on January 19, 2017, filed the Appellant's Motion for Stay of Sexual Therapy and Counseling Conditions of Sentencing Relating to Sex Offender Status. A hearing was set for this motion on February 21, 2017 at which this Court suspended the usage of polygraph testing in the Appellant's sentence to avoid his making any inculpatory statements whilst challenging his conviction. By an order of February 14, 2017, a PCRA hearing was set for April 5, 2017. On March 21, 2017, a Motion to Amend PCRA Petition was filed. Permission to amend was granted on April 5, 2017. The amended PCRA was filed that same day. Prior to a true PCRA hearing occurring, the Commonwealth filed their Commonwealth's Response to PCRA Petition, which sought the granting of that portion of the Appellant's PCRA that requested the reinstatement of his appeal rights *nunc pro tunc*. We signed the Commonwealth's proposed order on June 1, 2017, which reinstated the Appellant's post-sentence and appeal rights. Thereafter, on June 9, 2017, the Appellant caused to be docketed his Post-Sentence Motions. Prior to our review of those motions, on June 23, 2017, the Appellant filed a Notice of Appeal of our June 1, 2017 order. On July 7, 2017, pursuant to the Pennsylvania Rules of Appellate Procedure, Rule 1925(b), the Appellant was directed to file a statement of matters complained of on appeal. That same

2

day, we also denied the Appellant's post-sentence motions based upon our belief that the filing of the notice of appeal denuded this Court of jurisdiction to decide those motions. See Pa.R.A.P. 1701(a). On July 17, 2017, the Appellant filed his Motion for Order Reinstating Defendant's Post-Sentence Motions based upon the averment that counsel had inadvertently appealed. Unfortunately, we do not believe we possess the power to enter orders in a case that has been appealed where the Superior Court has not remanded or relinquished jurisdiction, nor has the Appellant withdrawn his appeal. See again, Pa.R.A.P. 1701(a). Thereafter, the Appellant timely complied with our Rule 1925(b) request and submitted his Concise Statement of Matters Complained of on Appeal on July 28, 2017.

The Appellant appeals for the following reasons:

1. First, the Appellant complains that, as a result of the Commonwealth exercising all of its peremptory challenges to strike men, which resulted in the impaneling of an all-female jury, the Appellant was denied trial by a jury of his peers.

2. Secondly, the evidence adduced by the Commonwealth was insufficient to demonstrate, as required, ". . . a child under the age of 18 engaging in a prohibited sexual act or in the simulation of such act," because none of the photographs depicted actual or simulated sexual activity.

3. Thirdly, the Appellant argues that the evidence was insufficient to show that the persons depicted in each of the photos related to the charges upon which guilt was found were under the age of 18 as required by 18 Pa.C.S.A. § 1632(e).

3

Scans 12.28.2017 14:51 90389

4. Fourth, the Appellant avers that the photos undergirding each of the individual charges did not depict sexual acts and the evidence was insufficient to show that the photos were possessed for purposes of sexual stimulation or gratification of the possessor.

5. Fifth, the Appellant states that there was insufficient evidence presented to prove that the Appellant "knowingly" possessed the photos in question where the evidence demonstrated that the photos had been deleted and no evidence was produced that the Appellant had viewed them.

6. Sixth, the Appellant believes that the evidence was insufficient to show that the Appellant "knowingly" possessed Exhibits #5, #6, #7, and #8 where those photos had been downloaded in 2009 and 2010 before the Appellant gained any access to the computer in question in the last quarter of 2012 and all of the photographs had been deleted.

7. Seventh, the Appellant alleges that Detective Baker introduced misleading, irrelevant, and confusing computer terminology that resulted in a verdict based upon insufficient and irrelevant evidence.

8. Eighth and finally, the Appellant submits that there was insufficient evidence to show that the Appellant "knowingly" possessed Exhibit #12.

We would note that it is our belief that the Appellant did not fully develop the record on all of these claims of error; however, any judgement about waiver will be made by the Superior

4

Court. We will endeavor to address each matter complained of.

## II.     Facts

At trial, Detective John Bumstead testified that he began investigating the Appellant based upon information received from Detective Mark Baker. (Notes of Testimony, 11/2/15, at 73.) Based upon this information, a search warrant was garnered and served at the Appellant's address of 47 North Main Street, Second Floor Rear Apartment, Mount Wolf Borough, PA. *Id.*, at 74. The Appellant was informed that the investigators were searching for child pornography and the Appellant was given his Miranda Warnings. *Id.*, at 75. Thereafter, the Appellant sated that he is addicted to pornography, which he likened to being alcoholic, and then he declined to make any further statements. *Id.*, at 76. The Appellant was transported to a police station and, advised that the Miranda Warnings were still in effect, stated that he did not wish to speak sans counsel. *Id.*, at 77. On cross-examination, Detective Bumstead indicated that he had not personally examined any of the items seized from the Appellant's residence and had, instead, turned over the evidence gathered to Detective Baker. *Id.*, at 78.

Detective Baker took the stand and testified that he is an investigator for Northern York County Police Department, part of the York County Cyber Crime Task Force, part of the Internet Crimes Against Children Task Force, and a task force officer with the F.B.I. *Id.*, at 81. Detective Baker is certified to perform computer forensic examinations. *Id.*, at 82. The detective is not, however, trained to identify what is or is not child pornography. *Id.*, at 83.

5

Rather, he has experience with child pornography based upon combating it since 2008. *Id.* Detective Baker stated that he has never been qualified as an expert in identifying child pornography. *Id.* Without objection, Detective Baker was qualified as an expert in computer forensic analysis. *Id.*, at 84.

The genesis of this case was Detective Baker monitoring a file-sharing application known as "BitTorrent." *Id.*, at 85. Asked by the prosecution to explain the nature of BitTorrent, Detective Baker testified as follows:

> Basically—it basically boils down to what actually is a torrent. A BitTorrent is a bunch of files. It can actually [be] one file or 40,000 files. They are in one container.
> It usually they are of the same thing. [sic] It's a way for people to share data without cramping up bandwidth for single users. It used to be, when I was a kid, you would actually make a connection to somebody else's computer, download the file directly from them. If you are downloading multiple files from that person, you are taking away their internet connection by taking away their bandwidth.
> The way that BitTorrent is set up, the files—the torrent is actually broken up into multiple pieces. So when I go online, and say I would like to get this torrent, whatever it is, a movie or a group of images or whatever, my torrent find will go out and say, who has this torrent. And out of the 6 computers that may have it, I'll pull pieces from all 6 computers. That way we'll be able to take everybody's bandwidth all at the same time and I'll be able to get the complete torrent package.

*Id.*, at 85-86. The detective then explained that a unique "information hash" identifies each torrent and that investigators have developed a list of known child porn hashes. *Id.*, at 86. The software used by child pornography investigators is set up to only draw information from one target computer, which, inevitably, results in the file-sharing software on the target computer recognizing that it alone is supplying information and then terminating the

6

connection. *Id.*, at 87.

Pertinent to this case, one image of interest was downloaded out of 1700 files associated with a particular information hash before the connection was severed. *Id.*, at 88. Detective Baker believed that image to have depicted child pornography. *Id.*, at 92. The IP address was identified as York Haven, which is in York County. *Id.*, at 93. A warrant was obtained and served on Comcast who identified the Appellant and his physical address as the subscriber associated with that IP address. *Id.* The detective then described how he received evidence including a loose hard drive and two other hard drives that he removed from computers. *Id.*, at 96. Those hard drives were each attached to a forensic write blocker, which bridges the suspect's hard drive the detective's computer. *Id.* The write blocker blocks any attempts by the detective's computer to edit the seized hard drive. *Id.*, at 96-97. Exact copies were then made of the hard drives, which prevented any risk of the original hard drives being altered. *Id.*, at 97.

On the loose hard drive, Detective Baker found four images that he believed showed child pornography. (N.T., 11/2/15, at 97.) Also on this drive was found an application to view torrents. *Id.*, at 97-98. The detective then identified four images of suspected child pornography from the loose hard drive. *Id.*, at 98. These images had been deleted and only existed as data that the computer was authorized to overwrite. *Id.*, at 100. No dates could be obtained for the images on the loose hard drive. *Id.*, at 100-01. On cross-examination, Detective Baker explained that the dates of three of the four images indicated 2010 as the

7

date of the originals and digitalization and 2011 as the date on which the photos were taken. *Id.*, at 135-36. These dates correspond to the camera used to produce the photos and the detective testified that he would need to examine the actual camera used to reconcile any discrepancies regarding dates on which the photos were created. *Id.*, at 135. The loose hard drive also contained a file shredding piece of software that is designed to overwrite the data of a file such that the overwritten file cannot be recovered. *Id.*, at 101-02. Detective Baker opined that the presence of this software demonstrated that the Appellant possessed a mid-level degree of sophistication for concealing child pornography. *Id.*, at 102. The images from the loose hard drive were then published to the jury. *Id.*, at 102-03. Detective Baker opined that the loose hard drive images depicted child pornography. *Id.* Following a sidebar, the jury was instructed that it was for them to decide if the images showed child pornography. *Id.*, at 105. Over the objections of defense counsel, Detective Baker testified regarding some of the names of torrents discovered on the loose hard drive, which included terms like "preteen." *Id.*, at 105-07. These descriptive titles would have been available to the Appellant prior to any downloading by him. *Id.*, at 108. The Windows Vista Business operating system of the loose hard drive is registered to "Jody," the computer's name is "Nicholas 3," and there was an unidentified user for the McAfee account. *Id.*, at 116-17. One of the installations occurred on September 20, 2008; however, it is not clear whether that installation refers to the Windows operating system or the McAfee account. *Id.*, at 117.

A Dell laptop that was analyzed contained a torrent sharing application and a

8

different type of shredding application that functioned like the one described previously. *Id.*, at 108-09. Three images were recovered from the Dell laptop. *Id.*, at 109. Detective Baker characterized these images as being child pornography and described the images before those images were published to the jury.[2] *Id.*, at 110-12. Some of the torrents found on the loose hard drive and the Dell laptop included "LS" as a descriptor, which, from his training and experience, Detective Baker knows to be often associated with the name of a former child pornography magazine. *Id.*, at 114-15. The operating system on the Dell laptop was registered to "Shannon" when it was installed on November 5, 2013. *Id.*, at 116.

One image was recovered from the Gateway laptop, which was published to the jury. *Id.*, at 117-18. Additionally, a sharing program known as "Limewire" was found on the Gateway laptop. *Id.*, at 118-19. Detective Baker described how Limeware has a globally unique identifier for each time it is installed that he referred to as a "GUIB." *Id.*, at 119. The Gateway laptop had a GUIB. *Id.* When checked against the International Crimes Against Children website, the GUIB for the Gateway laptop showed it had been sharing child pornography. *Id.*, at 120. In fact, the GUIB indicated that the Gateway laptop had travelled all over the United States and Canada to places that are well removed from one another. *Id.*, at 139-41. The Gateway's operating system was Windows XP Service Pack 3, which was not registered to any particular person during setup on July 25, 2009. *Id.*, at 121. This indicated

_____

2 It is not clear from the transcript that the images were circulated to the jury; however, this Court has no reason to doubt that they were based upon the lack of any objections from either of the parties regarding the photos being supplied, or not, to the jury.

9

to Detective Baker that whoever set up the Gateway had declined to supply any personally identifying information when setting up the Gateway laptop. *Id.*

On cross-examination, Detective Baker agreed with the defense that *any* type of file can be shared on BitTorrent. (N.T., 11/2/15, at 127.) Additionally, BitTorrent and shredder applications have legal uses. *Id.*, at 128. The detective admitted that he could not identify who any of the subjects of the 8 pictures in question are, nor was he aware of their ages. *Id.*, at 149-50.

When it came time for the defense to present evidence, they called Jody Nichols who is the Appellant's sister. *Id.*, at 14. Ms. Nichols stated that the Appellant worked for her at Nichols' Insurance from January to September of 2013. (N.T., 11/4/15, at 15.)[3] The loose hard drive, which was named "Nicholas 3," was bought for the insurance company to give to sales associates and was used from 2008 to September or October of 2011. *Id.*, at 15-16. Having asked his sister for a computer to use, Ms. Nichols gave the Appellant a computer that had contained the loose hard drive during the last quarter of 2012—prior to the Appellant's employment at Nichols' Insurance. *Id.*, at 16-17. The computer that Jody Nichols had lent to the Appellant was returned to her without the hard drive. *Id.*, at 18.

---

3 We would note that the two days of court proceedings were bifurcated by a court holiday. This seems to have resulted in the transcript of the second day beginning anew. In order to avoid confusion, we provide this explanation and refer to the second day of the trial transcript by its date of 11/4/15.

## III.  Matters Complained of on Appeal

A. Trial of Appellant's Peers

The Appellant's first matter complained of is that, as a result of the Commonwealth exercising all of its peremptory challenges to strike men, which resulted in the impaneling of an all-female jury, the Appellant was denied trial by a jury of his peers. We believe this complaint is likely premature.

In *Batson v. Kentucky*, the Supreme Court of the United States of America, reaffirming and expanding upon their prior decision in *Swain v. Alabama*, 380 U.S. 202 (1965), held that the Equal Protection Clause of the 14th Amendment disallows prosecutors from striking potential jurors based upon the erroneous notion that black jurors could not be impartial in a case presented against a black defendant.[4] 476 U.S. 79, 89 (1986). In *Batson*, The Court went on to state:

> [A] defendant may establish a *prima facie* case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of

---

4 Westlaw provides an extremely helpful primer on the subject of *Batson* challenges that has guided our understanding of the matter and which can be found at: 10A West's Pa. Prac., Driving Under the Influence § 27:6 (2016 ed.)

11

factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.*, at 96 (internal citations omitted). The case law has developed such that defendants of any race may assert *Batson* challenges to the exclusion of a race *or gender* from their jury. See *Powers v. Ohio*, 499 U.S. 400 (1991) and *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), respectively. See also, *Commonwealth v. Roney*, 79 A.3d 595, 618-19 (Pa. 2013) (citing *J.E.B., supra*).

The relevant circumstances a court must consider include any patterns in striking a race of jurors and the prosecutor's questions and comments while conducting the *voir dire* process. *Commonwealth v. Wilson*, 649 A.2d 435, 443 (Pa. 1994). Interestingly, "[t]he striking of a number of individuals belonging to some cognizable minority group, however, is not dispositive that a violation of *Batson* has occurred." *Commonwealth v. Rico*, 711 A.2d 990, 993 (Pa. 1998) (citing *Commonwealth v. Abu-Jamal*, 555 A.2d 846, 850 (Pa. 1989)).

In order to lay the groundwork for a successful *Batson* challenge appeal that is premised upon a *prima facie* case of racial discrimination having occurred during *voir dire*, defense counsel must make a record of the following:

1. the race or gender of all the venirepersons in the jury pools;

2. the race or gender of all venirepersons remaining after challenges for cause;

3. the race or gender of those removed by the prosecutor; and

4. the race or gender of the jurors who served and the gender of jurors acceptable by the Commonwealth who were stricken by the defense.

12

*Id.* (citing *Commonwealth v. Spence*, 627 A.2d 1176, 1182-83 (Pa. 1993); *Commonwealth v. Jones*, 668 A.2d 491, 518 (Pa. 1995)). Any failure of defense counsel to make such a complete record precludes appellate review of *Batson* challenges. *Commonwealth v. Thompson*, 106 A.3d 742, 752 (Pa. Super. Ct. 2014) (citations omitted). "After such a record is established, the trial court is to consider the totality of the circumstances to determine whether challenges were used to exclude venirepersons on account of race or gender." *Rico, supra*, at 993. "If the court finds in the affirmative, the prosecutor is to offer neutral reasons for each of its strikes." *Id.; Batson*, 476 U.S., at 97 (citations omitted).

Unfortunately for the Appellant, we do not believe that trial counsel made a record that addressed the inquiries that must be made for a *Batson* challenge. Again, such a failure *precludes* appellate review of any *Batson* challenges. This is not to say that the matter will forever evade review; but, rather, that it is untimely submitted on a direct appeal. For this reason, we humbly seek affirmance as to this matter complained of on appeal.

In *Commonwealth v. Sepulveda*, the Pennsylvania Supreme Court found that the defendant could not demonstrate, in a Post-Conviction Relief Act setting, purposeful discrimination based upon statistical evidence. 55 A.3d 1108, 1132-33 (Pa. 2012) (citations omitted). We would note, however, that, in *Sepulveda*, the Commonwealth had not exercised all of its peremptory strikes, the Commonwealth had accepted jurors of both genders, and nothing in the transcript demonstrated gender-based bias or animus. *Id.*

13

## B. Sufficiency of the Evidence

A number of the Appellant's matters complained of relate to the supposed insufficiency of evidence.[5] Therefore, we provide a brief synopsis of relevant law to avoid needless repetition later. In *Commonwealth v. Fabian*, the Superior Court succinctly laid out their standard of review for sufficiency of the evidence challenges as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

60 A.3d 146, 150-51 (Pa. Super. Ct. 2013) (*Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa. Super. Ct. 2005)). With the aforementioned law in mind, we turn to those matters complained of regarding the sufficiency of evidence.

---

5 We believe that the Appellant could have challenged the sufficiency of the evidence to prove Possession of Child Pornography in one consolidated matter as all of the charges are identical—save for the image in question—and the Appellant is realistically challenging the sufficiency of the evidence presented to show Possession of Child Pornography. Nonetheless, we will attempt to hew as closely as possible to the Appellant's presentation so as to avoid missing an issue raised.

14

## 1. *Underage Prohibited Sexual Acts or Simulation Thereof*

The Appellant's first and fourth matters complained of are so intertwined as to be all but inseparable. Therefore, for conservation of judicial resources, we dispense with them simultaneously. In his second matter complained of on appeal, the Appellant avers that the evidence adduced by the Commonwealth was insufficient to demonstrate, as required, ". . . a child under the age of 18 engaging in a prohibited sexual act or in the simulation of such act," because none of the photographs depicted actual or simulated sexual activity. For his fourth matter complained of on appeal, the Appellant avers that the photos undergirding each of the individual charges did not depict sexual acts and the evidence was insufficient to show that the photos were possessed for purposes of sexual stimulation or gratification of the possessor. For the reasons cited *infra*, we disagree with both contentions.

*Ab initio*, we describe the photos in question. Exhibit number 5 was described by Detective Baker as follows:

> It's an image of two prepubescent females and one prepubescent male standing naked, and it appears to be in a bathhouse. One of the females is holding a tennis ball. It looks like it's overseas, if I would have to guess.

(Notes of Testimony, 11/2/15, at 99.) Exhibit number 6 was described as follows: "This is an image of two prepubescent females laying [sic] on a beach, both are completely naked and laying on their stomachs in the sand as the water comes over them." *Id.* Exhibit number 7 was described as follows: "This is two prepubescent females, it looks like they are standing in a shower, one might be a male, I can't tell by the way it's blurred out." *Id.*, at 99-100.

15

Exhibit number 8 was described as follows: "This is of another two prepubescent females, they are both kneeling on, it looks like a couch, facing a wall, and they are both completely naked[.]"*Id.*, at 100. Exhibit number 9 was described as follows: "It appears to be a prepubescent female kneeling on a bed. She's completely naked facing way from the camera." *Id.*, at 110. Exhibit number 10 is described as follows: "This is of a prepubescent female on a professional set, she's completely naked, and she's holding a flower above her head." *Id.*, at 110-11. And, Exhibit number 12 was described as follows: "This is an image of a prepubescent female laying [sic] naked, it appears to be on a desk, I believe there is an adult male that is having intercourse with this female." *Id.*, at 118.

All of the charges of which the Appellant was convicted were for Possession of Child Pornography. Possession of Child Pornography is defined in relevant part of 18 Pa.C.S.A. § 6312(d) as follows:

> Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

Based upon his first complaint, the Appellant does not believe the photos depict actual or simulated sexual activity. And, the definition for "prohibited sexual act" forms the basis of the Appellant's fourth matter complained of. One cannot be easily addressed without touching upon the other. So, we look to the definition of "prohibited sexual act," as defined at 18 Pa.C.S.A. § 6312(g) and find that it includes the following:

16

> Sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, *lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction.*

(emphasis added). All of the photos, as described above, depict lewd exhibition of the genitals or nudity that was produced for sexual stimulation. To quote Mr. Justice Douglas in his dissenting opinion in *Miller v. California*, regarding what qualifies as hardcore pornography, "'I could never succeed in (defining it) intelligibly,' but 'I know it when I see it.'" 413 U.S. 15, 39 (quoting Mr. Justice Stewart's concurring opinion in *Jacobellis v. State of Ohio*, 378 U.S. 184, 197 (1964)). We believe the jurors could reasonably conclude that the photos in question met the definition of a prohibited sexual act.

Delving further into the operative definition, in *Commonwealth v. Savich*, the Superior Court found that 18 Pa.C.S.A. § 6312 is not void for vagueness or arbitrary as applied to the videotaping of children. 716 A.2d 1251, 1255-57 (Pa. Super. Ct. 1998) (citations omitted). Though another section of 18 Pa.C.S.A. § 6312 is at issue in *Savich*, it relies upon the same definitions as § 6312(d). And, "[t]he term 'for purposes of sexual stimulation or gratification of the viewer' permits the fact-finder to distinguish between depictions such as those in the present case from nude depictions taken for legitimate scientific, medical or educational activities, which are specifically exempt under § 6312(f)." *Id.*, at 1256 (citing *Washington v. Bohannon*, 814 P.2d 694 (1991)). Most instructive for this case is *Commonwealth v. Davidson.* 938 A.2d 198 (Pa. 2007). *Davidson*, like *Savich*

17

addresses issues of potential vagueness in the definition of "prohibited sexual act" and rejects them. *Id.*, at 213. The Appellant, though not specifically raising this issue, is wallowing in it. Put simply, the Appellant's first and fourth complaints suggest that there is simply no way of ascertaining whether the pictures were "depicted for the purpose of sexual stimulation or gratification." 18 Pa.C.S.A. § 6312(g). In *Davidson*, The Court, in discussing the related § 6312(a)[6], states the following:

> The "nudity" qualifier does not create a subjective standard requiring people to guess at its meaning. The content, focus and setting of the images create an objective standard which *allows a person of common intelligence to know what images are prohibited under the statute.*

*Davidson, supra,* at 213 (emphasis added). The *Davidson* Court went on to state:

> The trial court found that "[a]t least [ ] 28 of the thousands of pornographic images stored within [a]ppellant['s] [ ] computer depicted children engaged in vaginal intercourse, anal intercourse, oral sex, performing sex acts, or *in various stages of undress or in sexually and [sic] in sexually provocative poses.* This fact clearly satisfies the 'prohibited sexual act' definition contained in [Section 6312(a)]." Utilizing the statutory definition of "prohibited sexual act," the court properly focuses on *the content* of the images in making its determination.

*Id.*, at 213-14 (citation omitted) (emphasis added). Moreover, "common sense and human experience dictate that an individual of ordinary intelligence, not a mind reader or a genius, can identify whether a photograph of a nude child depicts 'nudity' for the purpose of sexual stimulation or gratification." *Id.*, at 214. The fact-finding jury, armed with their common sense, was eminently able to decide if the photos in question depicted nudity for the purpose

---

6 The definition cited at 18 Pa.C.S.A. § 6312(a) was renumbered as 18 Pa.C.S.A. § 6312(g) in 2009.

of sexual stimulation or gratification of any person who might view them. And, our estimation of the photos comports with how the jury must have viewed the photos considering their finding of guilt. We believe that the images challenged by the Appellant were possessed for purposes of sexual stimulation or gratification of the Appellant. We therefore dutifully request affirmance as to this matter complained of on appeal.

### 2. Age of Subjects in Pictures

For his third matter complained of, the Appellant argues that the evidence was insufficient to show that the persons depicted in each of the photos related to the charges upon which guilt was found were under the age of 18 as required by 18 Pa.C.S.A. § 1632(e). For the following reasons, we disagree.

18 Pa.C.S.A. § 6312(d) states that, for a person to be guilty of Possession of Child Pornography, the subject must be, "a child under the age of 18 years." In *Commonwealth v. Koehler*, the Superior Court states that, "'the proof necessary to satisfy the element of age in a dissemination or possession of child pornography case is not limited to expert opinion testimony.'" 914 A.2d 427, 438 (Pa. Super. Ct. 2006) (quoting *Commonwealth v. Robertson-Dewar*, 829 A.2d 1207, 1212 (Pa. Super. Ct. 2003)). The *Koehler* court goes on to state that, "[s]ection 6312 does not mandate expert testimony on age, as it permits a case-by-case process whereby the trier of fact may be able to decide the element of age based on the outward physical appearance of an alleged minor.'" *Id.* (quoting *Robertson-Dewar, supra*, at 1213). "However, where the alleged minor is post-puberty but appears quite young, expert

19

testimony may well be necessary to assist the trier of fact as to age." *Id.* Like the defendant in *Koehler*, it does not appear that a timely objection was raised regarding this issue, which will likely prevent appellate review. *Id.* (citing Pa.R.A.P. 302). We recognize that appellate counsel was not trial counsel and that this issue may recur as a collateral matter challenging trial counsel's effectiveness; however, we will nonetheless address the issue as we do not believe that there would have been grounds to object vis-à-vis the age of the subjects of the photos.

From our review of the photos, all of the subjects appear to be prepubescent. Per *Koehler*, *supra*, it was for the jury to determine, sans expert testimony, whether the subjects of the photos in question were under the age of 18. This Court has absolutely no question as to whether or not the subjects of the photos are prepubescent. To this Court, they very clearly are. We leave any conclusion to the contrary to be made by our judicial betters. For the foregoing reasons, we pray for affirmance as to this matter complained of on appeal.

### 3. *Knowing Possession*

The Appellant's fifth, sixth, and eighth matters complained of are so interrelated as to be best addressed together. All three of these matters complained of relate to whether or not the Appellant knowingly possessed the photos at issue in this case. In his fifth matter complained of, the Appellant states that there was insufficient evidence presented to prove that the Appellant "knowingly" possessed the photos in question where the evidence demonstrated that the photos had been deleted and no evidence was produced that the

20

Appellant had viewed them. For his sixth matter complained of, the Appellant believes that the evidence was insufficient to show that the Appellant "knowingly" possessed Exhibits #5, #6, #7, and #8 where those photos had been downloaded in 2009 and 2010 before the Appellant gained any access to the computer in question in the last quarter of 2012 and all of the photographs had been deleted. The Appellant's eighth matter complained of is that there was insufficient evidence to show that the Appellant "knowingly" possessed Exhibit #12.

In most of the case law reviewed by this court, there were admissions that child pornography was viewed by the defendant. *Commonwealth v. Diodoro*, 932 A.2d 172, 174 (Pa. Super. Ct. 2007); *Commonwealth v. Baker*, 24 A.3d 1006, 1021-1022 (Pa. Super. Ct. 2011). We have also reviewed cases in which circumstantial evidence indicated that the defendant was the one who viewed the photos. *Commonwealth v. Colon-Plaza*, 136 A.3d 521, 526-27 (Pa. Super. Ct. 2016) ("Not only was [the defendant] the internet subscriber, profile user of the HP laptop, and one of just two residents living at the address, he also admitted to having access to the laptop, knowing its password, and, significantly, using its Ares file-sharing program in the past."); *Commonwealth v. Koehler*, 914 A.2d 427, 427 (Pa. Super. Ct. 2006) ("[I]t is clear that sufficient evidence existed to support the jury's determination. The Commonwealth established, *inter alia*, that the computer bore a screen name, systems properties name, and a software registration name all referring in some respect to Appellant's proper name. Furthermore, the Commonwealth established that 12 of the 14 video clips in question were downloaded onto his computer in the early morning

21

before Appellant's work hours began, and the other two videos were downloaded at nearly midnight, after Appellant's work hours. The totality of the circumstances presented at trial thus permitted the jury to infer the Appellant's ownership, use, and ability to access the materials at issue such that it was he, and no one else in his aunt's home, who possessed the child pornography at issue.") The case *sub judice* clearly fits within the second species of such cases.

The facts showing that the Appellant knowingly possessed the photos in question are as follows. Comcast identified the Appellant as the registered account holder associated with the IP address. The physical address associated with that account appears from the evidence to have been the Appellant's residence. The Appellant's sister stated that *the Appellant was given* the loose hard drive to use, which contained Exhibits numbered 5 through 8. The operating system of the Dell laptop, which contained Exhibits numbered 9 and 10, was registered in the Appellant's name of "Shannon." The loose hard drive, the Dell laptop, and the Gateway laptop all had some form of file-sharing application of the sort whose activity Detective Baker's investigation monitored. Both the loose hard drive and the Dell laptop contained shredder applications, which does not seem coincidental where the Appellant possessed both devices and those devices contained child pornography. Detective Baker testified that, in his experience, shredding applications are typically found in child pornography cases where the offender exhibits at least a mid-level degree of sophistication. This explains the deletion of files that were recovered by Detective Baker. While not

22

definitive on its own, *the Appellant possessed* at least two computers that made use of shredding applications where child pornography had been deleted. Again, following a search of his residence, the Appellant was found to be in possession of three devices containing child pornography where at least one of the devices was clearly registered in the Appellant's name. When he was served with the search warrant and told that the officers were looking for child pornography, the Appellant made what might be considered a statement against own interest or, perhaps, an excited utterance when he responded that he was addicted to pornography. The Appellant knew the investigators were present at his property looking for child pornography; yet, the defense would surely have us believe, he responded by proclaiming his addiction to the related, but *legal*, item of adult pornography. It seems more likely that the Appellant's admission was referring to child pornography. Finally, the only computer that the Appellant did not own belonged to his sister's insurance company. Interestingly, the Appellant returned that computer without the hard drive, which evidences knowledge on his part that it contained information that he did not wish to divulge.

The totality of the circumstances of this case militates in favor of finding that the Appellant did knowingly possess child pornography for which he was convicted. We are not in a position to say that this is an ironclad circumstantial case; however, by the very nature of these sorts of crimes, a sophisticated trafficker in child pornography might evade prosecution by dint of savvy actions such as the use of shredding applications. Obviously, all criminal actions might elude prosecution through careful planning; yet, we believe that there is an

23

enhanced risk in cases of this nature as a result of the ethereal nature of computer-based evidence. In our estimation, there is enough circumstantial evidence to tie the Appellant to all of the images for which he was convicted and infer that he viewed those images. Viewing the evidence in the light most favorable to the verdict-winning Commonwealth, we believe that there was sufficient evidence presented by the Commonwealth of the Appellant's intentional or knowing possession of the offensive images. Trusting that if we have erred then our learned superiors will set us right, we reverentially seek affirmance as to these matters complained of on appeal.

### i. Knowledge of Contents on Loose Hard Drive

In addition to the foregoing on the subject of knowing possession, we must address the contention in his sixth matter complained of that the Appellant did not have access to the loose hard drive at the time when the illicit images were downloaded. We would first note that the Appellant has not directed us to where in the transcript or admitted evidence it is evident that the images on the loose hard drive were downloaded prior to the Appellant's possession of the loose hard drive. The Appellant's Concise Statement of Matters Complained of on Appeal avers that there is evidence showing that Exhibits #5, #6, #7, and #8 were downloaded in 2009 and 2010. See unnumbered page 2. We cannot locate this evidence. Our review of the transcript reveals that trial counsel elicited from Detective Baker that the only dates associated with these exhibits related to the camera and the time at which the photos were created in 2010 or 2011 and *not* when they were downloaded onto the loose

24

hard drive. Assuming this is the evidence to which the Appellant refers then we are left to ponder why it matters when the images were created. The Appellant is not alleged to have created the images; but, rather, the Appellant is alleged to have possessed already existing photos, which necessarily must have been created at some date prior to his accessing them. Moreover, we reiterate the suspicious action of the Appellant in removing the hard drive from the computer before returning it to the insurance company as evidence of knowledge.

## ii. Solitary Gateway Image and Location Inconsistency

In his eighth matter complained of on appeal, the Appellant highlights the fact that the Gateway computer contained just one illicit photo that had been deleted and the fact that the Gateway had shared child pornography from physical locations across the United States and from international locales.[7] Concise Statement of Matters Complained of on Appeal, at unnumbered page 4. The Appellant believes that this defeats any notion that he knowingly possessed the illicit image on the Gateway. We disagree.

The fact that there was but one image located on the Gateway and it had been deleted speaks to the Appellant's modus operandi. All of the evidence considered *in toto* depicts an offender who viewed child pornography and then sought to obliterate the evidence of such acts. Viewed in isolation, the evidence from the Gateway computer would not be half so strong as it is in conjunction with evidence garnered from the other two hard drives seized at

---

[7] The Appellant's concise statement refers to the Gateway downloading images from across the United States and internationally; however, the trial testimony indicated that the Gateway had *shared* from these locations. (N.T., 11/2/15, at 120 and 139-41.)

25

the same time. The loose hard drive and the Dell laptop contained shredding applications whose purpose is to permanently delete material from a computer. No great cache of child pornography was found on either the loose hard drive or the Dell laptop, which speaks to what Detective Baker described as the Appellant's mid-level grade of sophistication in viewing child pornography. The Appellant is a person who is savvy at covering his tracks. No wonder then that only a solitary image was found on the Gateway or the fact that it was deleted. It is the Appellant's concerted efforts to conceal his wrongdoing that end up demonstrating a pattern of concealment that strengthens the inference that he intentionally or knowingly possessed the images in question.

When we consider the Appellant's argument that there was a dearth of evidence to demonstrate he was ever in any of the locations from which the GUIB indicated that the Gateway laptop had shared child pornography, we are struck by the fact that it was not the Commonwealth that elicited this information. It was the defense who questioned Detective Baker regarding the varied locations associated with the Gateway and the sharing of child pornography. (N.T., 11/2/15, at 139-41.) Insofar as sufficiency of the evidence goes, we remember that ". . . the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Fabian*, 60 A.3d 146, 150-51 (Pa. Super. Ct. 2013) (citations omitted). As with any defendant, the Appellant had no burden at trial, but his trial counsel *did* assert to the jury that the Commonwealth had not proven that the Appellant was ever present in the far-flung locations that the Gateway laptop had

26

apparently been to. (N.T., 11/4/15, at 37.) The jury was obviously unswayed by this reasoning.

To whatever, extent this is actually a challenge to the weight of the evidence, we recite the relevant law. Allegations that a verdict is against the weight of the evidence are decided based upon the discretion of the trial court. *Commonwealth v. Chine*, 40 A.3d 1239, 1243 (Pa. Super. Ct. 2012) (citing *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa. Super. Ct. 2005)). The trier of fact, "is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011). Moreover, the trial court should not disturb a jury's verdict unless the verdict is "so contrary to the evidence as to shock one's sense of justice." *Id.* Further, "unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. Ct. 2009) (citing *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. Ct. 2004)). Appellate review will not overrule a trial court's determination as to weight of the evidence unless "the facts and inferences of record disclose a palpable abuse of discretion." *Id.* To this end, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Id.*

As we state in almost every appeal vis-à-vis a weight of the evidence challenge, it is true that there are certainly pieces of evidence which arguably undermine the Commonwealth's case; however, the test is not whether there is any evidence that goes

27.

against the Commonwealth's assertions. Rather, this Court is to examine whether the verdict was "so contrary to the evidence as to shock one's sense of justice." *Ramtahal, supra.* As our sense of justice was not shocked, we believe the jury's verdict should remain undisturbed.

### 4. *Verdict Based on Insufficient and Irrelevant Evidence*

For his seventh matter complained of, the Appellant alleges that Detective Baker introduced misleading, irrelevant, and confusing computer terminology that resulted in a verdict based upon insufficient and irrelevant evidence. The Appellant makes two specific allegations in this vain, whose separation we maintain for clarity.

### i. Implication of Detective Baker's Probable Cause

The Appellant believes that the jury was inappropriately influenced by Detective Baker's testimony regarding what drew his attention to the Appellant and the improper suggestion that there were many more child pornographic photos in the Appellant's possession than what was ultimately produced for the jury. The Appellant is referring to a point in the trial during which Detective Baker described, at the beginning of the investigation, being able to download one image associated with an information hash before the connection was choked off. (N.T., 11/2/15, at 88.) The detective testified that there were approximately 1700 total files and that 860 were of interest to the Internet Crimes Against Children Task Force. *Id.* And, "[o]f interest means that they are either partially naked pictures or completely naked child pornography images." *Id.*

The evidence in question was initially proffered regarding a dissemination charge,

28

(N.T., 11/2/15, at 88-92), which this Court dismissed for lack of evidence, (N.T., 11/4/15, at 7). Nonetheless, the evidence was still relevant to those charges that proceeded to the jury. Evidence of prior bad acts is admissible to establish the identity of the person charged with a crime. Pa.R.E. 404(b)(2); See also *Commonwealth v. Dillon*, 863 A.2d 597, 601 (Pa. Super. Ct. 2004) (citing Pa.R.E. 404(b)). The question of how the detective became interested in the Appellant and identified the Appellant required the recounting of Detective Baker's detection of illicit images emanating from what was determined to be the Appellant's address. And, "our courts have long recognized the special significance of evidence which provides jurors with the *res gestae*, or complete history, of a crime." *Dillon, supra* (citing *Commonwealth v. Paddy*, 800 A.2d 294, 308 (Pa. 2002)). As was stated by the Superior Court in *Smith v. Morrison*,

> [t]he law "does not require a court to sanitize a trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged."

47 A.3d 131, 137 (Pa. Super. Ct. 2012) (quoting *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa. Super. 2009) (citation omitted)). A recognized hash was being shared from the Appellant's computer. That hash was known to contain a certain number of files that were of interest to investigators and led to the investigation of the Appellant. Detective Baker conveyed this in his testimony. We believe that a jury was cognizant of the fact that the Appellant was not found to possess 860 images of fully or partially nude children. This was evident from the total of seven images that were described and presented to the jury and the

29

testimony that these constituted all that was located on the computers seized from the Appellant. The jury had a right to know how and why the detective became interested in the Appellant. We therefore hope for affirmance as to this matter complained of on appeal.

### ii. Misleading Expert Testimony

In addition to his complaint that Detective Baker misled the jury regarding the number of child pornographic images, the Appellant complains that the detective confused the jury by misrepresenting what a BitTorrent is. The Appellant alleges that a BitTorrent is a keyword that links to files rather than containing the files itself. *Arguendo* the Appellant is right, how does this materially change anything? Without this Court relying upon our futile internet searches that seem to support both contentions to varying degrees and which we have not been able to check with experts, the jury was well aware as to how many photos the Appellant was alleged to possess. Detective Baker described seven photos that were found on devices recovered from the Appellant's address, which the jury saw.

Even if it was error to admit Detective Baker's testimony regarding what exactly a BitTorrent is, we would offer that it was harmless error. In *Commonwealth v. Allshouse*, the Supreme Court of Pennsylvania stated the following:

> [T]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that "[a] defendant is entitled to a fair trial but not a perfect one."

36 A.3d 163, 183 (Pa. 2012) (quoting *Commonwealth v. Thornton*, 431 A.2d 248, 251 (Pa.

30

1981)). And, "[h]armless error is present when the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Commonwealth v. Garcia*, 712 A.2d 746, 749 (Pa. 1998) (citing *Commonwealth v. Ragan*, 645 A.2d 811, 820 (Pa. 1994)). Three devices were seized from the Appellant that all contained child pornography. The usage of a file-sharing application helped to locate and identify the Appellant. The presence of the file-sharing applications also helped to show that the Appellant's possession of the child pornography was intentional or knowing. The precise manner in which BitTorrents work could not have contributed to the verdict because the jury only needed to determine if the Appellant possessed the images he was charged with possessing. The evidence recovered from the loose hard drive, Dell laptop, and Gateway laptop was overwhelming. Therefore, we respectfully request affirmance as to this matter complained of on appeal.

## IV.  Conclusion

Based upon the reasons stated above, this Court respectfully urges affirmance of our June 1, 2017 order.

BY THE COURT,

DATED: December 28, 2017

MICHAEL E. BORTNER, JUDGE

32